(June 15, 1901.)'

### STATE v. RICE.

[66 Pac. 87.]

NEW TRIAL—APPLICATION THEREFOR.—An application for a new trial must be made within ten days, or within such time as the court by order may extend, under provisions of section 7953 of the Revised Statutes; otherwise the application is unauthorized, and should be denied.

ORDER DENYING NEW TRIAL—APPEAL—DISMISSAL OF APPEAL.—An appeal from an order denying a new trial will be dismissed upon motion, where the record shows that application therefor was not made within ten days, and the record fails to show that the time within which the application may be made was extended by the court or judge thereof.

BILL OF EXCEPTIONS—EXTENDING TIME FOR PRESENTING.—Where the record in a criminal case shows that counsel for the state and for the defendant stipulated in open court that either party should have sixty days after verdict in which to prepare and present bill of exceptions for settlement, and that such stipulation was entered in the minutes of the court with the knowledge and acquiescence of the court, and defendant's bill of exceptions was presented within sixty days after verdict, a motion to strike the defendant's bill of exceptions from the record, upon appeal, will be denied.

APPLICATION FOR POSTPONEMENT OF TRIAL—POPULAR EXCITEMENT AND PREJUDICE.—The existence of popular excitement and prejudice against the defendant is not ground for a postponement of trial in a criminal case, but may be grounds for change of venue.

SAME.—An order denying a continuance, upon the ground that a witness whose testimony is desired by the defendant is not ground upon which a reversal can be based, where it appears from the record that the testimony of such witness could not change the result of the trial, the evidence of the absent witness tending to prove a circumstance which would divert suspicion from the accused, but which would not tend to prove a defense.

SAME — DISCRETION OF COURT.—Refusal to grant a continuance being a matter largely within the discretion of the lower court, a judgment of conviction will not be reversed by reason of such refusal, unless it is apparent from the record that such discretion has been abused, and that the defendant has been prejudiced thereby.

SAME—TIME TO PREPARE FOR TRIAL.—Where the record shows that the defendant had two weeks after his arrest charged with the crime of which he was convicted in which to prepare for trial, the judgment will not be reversed because the trial court denied his application for continuance, on the ground that he had not had sufficient time to prepare for trial, and the record fails to show that he was prejudiced by reason of being hurried into trial.

APPEAL—REVERSAL—HARMLESS ERROR.—A reversal cannot be predicated upon harmless error.

EVIDENCE—ACCOUNT-BOOKS OF DECEASED.—The account-books of the deceased, shown to have been kept by him in his business, and which were in his handwriting, were properly admitted in evidence, for the purpose of showing that he should have had about $1,200 in cash at the time of the homicide, and the evidence showed that he only had about $400; that defendant was hard pressed for money just immediately preceding the homicide, but on the day of the homicide, and after the commission of same, paid numerous debts which he owed to parties in the vicinity.

WITNESS BEFORE GRAND JURY—CALLING SAME AT TRIAL.—The defendant being entitled to process to compel the attendance of witnesses, and having it within his power to call a witness whose name is indorsed upon the indictment as having appeared before the grand jury, the refusal of the trial court to compel the state to produce such witness at the trial is not ground for a reversal, especially when the record fails to show that the defendant made any effort to obtain the presence of such witness at the trial.

MISCONDUCT OF COUNSEL—DUTY OF PROSECUTING ATTORNEYS.—It is the duty of prosecuting attorneys to refrain from prejudicial statements in the presence of the jury, and to see that the defendant has a fair and impartial trial, but a judgment will not be reversed because of such misconduct, unless it is reasonably apparent from the record that the defendant was prejudiced thereby, and the record shows that substantial justice has been done.

EXPERT EVIDENCE—BLOOD AND BLOOD STAINS.—The assistance of chemistry and the testimony of expert witnesses are not necessary to show the existence of blood, owing to the familiarity of all persons competent to testify as witnesses with its appearance, and

it is only in cases where it is necessary to distinguish between the blood of a human being and that of the inferior animals that such expert evidence is necessary.

INSTRUCTIONS—LAW OF THE CASE—TECHNICAL ERRORS.—Where the instructions as a whole correctly give to the jury the law of the case and fully guard and protect the rights of the defendant, technical objections and immaterial errors therein are not grounds for disturbing the verdict.

(Syllabus by the court.)

APPEAL from District Court, Shoshone County.

Charles E. Miller, for Appellant.

The court erred in denying defendant's motion for a post-ponement of the trial of said cause. 1. It is commonly regarded as reversible error to deny a continuance where the application complies with every requirement of the law and is not made merely for delay, and the evidence is material and due diligence is shown, and the opposite party refrains from making such admissions as will obviate a continuance. (*Lilienthal v. Anderson,* 1 Idaho, 673; *People v. Brown,* 54 Cal. 243; *Lord v. Dunster,* 79 Cal. 477, 21 Pac. 865; *Sutton v. People,* 119 Ill. 250, 10 N. E. 376; *Saylor v. Commonwealth,* 97 Ky. 184, 30 S. W. 390; *Mercer v. Lowell Nat. Bank,* 29 Mich. 243.) 2. The existence of intense popular excitement and prejudice is a good ground for continuance. (*Beavers v. State,* 53 Ind. 530; *Bishop v. State,* 9 Ga. 121; *Cox v. State,* 64 Ga. 374, 37 Am. Rep. 76; *John v. State* (Tenn.), 1 Head 49; *State v. Poe,* 8 Lea (Tenn.), 647; *State v. Wells,* 61 Iowa, 629, 47 Am. Rep. 822, 17 N. W. 90.) 3. And failure to allow the accused proper time in which to prepare for trial is error. (*Conley v. People,* 80 Ill. 236; *Metts v. State,* 29 Ga. 271; *State v. Lewis,* 1 Bay (S. C.), 1; *Newman v. State,* 22 Neb. 356, 35 N. W. 194; *State v. Lewis,* 74 Mo. 222.) Evidence of identity, whether of person or thing, especially in capital cases, should be as certain as the most favorable circumstances will permit. (3 Greenleaf on Evidence, sec. 30; 1 Taylor on Evidence, sec. 555; Will's Circumstantial Evidence, c. 47.) In a trial for murder it is error to admit evidence of

the declarations of the deceased, made several hours before the murder. (*People v. Carkhuff,* 24 Cal. 640; *Combs v. State,* 75 Ind. 215; *Weyrich v. People,* 89 Ill. 90.) The court erred in permitting the counsel for the state to use the following language, in the presence and hearing of the jury, during the examination of the witness, Joseph Whelan: "As to what transpired there that first day of October in that store, we do not know what occurred there; there was no eye-witness so far as we know; it is known only to God Almighty, Rice and the spirit of the departed Maily. Circumstances that point to his guilt; among them was his need of money. This defendant was in financial embarrassment prior to this time. The statements which I made, I think are all borne out by the evidence already adduced." This language was used during the discussion of the admissibility of the evidence. (*Long v. State,* 56 Ind. 186; *State v. Graham,* 62 Iowa, 103; Cooley's Blackstone's, Commentaries, 354; *State v. Olds,* 19 Or. 397, 24 Pac. 349.) It is both a right and a duty to give to the jury, by evidence, as complete a picture as possible of all the surroundings; and this irrespective of any question of subsequently connecting the defendant with the transaction by other proofs. (*Brown v. People,* Mich. 433, 97 Am. Dec. 195; *Patten v. People,* 18 Mich. 27, 100 Am. Dec. 173; *Maher v. People,* 10 Mich. 226, 81 Am. Dec. 781.) Each fact necessary to the conclusion sought to be established must be proven by competent evidence beyond a reasonable doubt. (*Scott v. State,* 19 Tex. App. 325; *People v. Anthony,* 56 Cal. 397; *Clare v. People,* 9 Colo. 123; *Commonwealth v. Webster,* 5 Cush. 295, 52 Am. Dec. 711, and note.) The rule supported by the weight of authority is that, even though the evidence may fall short of establishing the plea, it may be considered by the jury with the entire evidence, in determining whether a reasonable doubt of defendant's guilt has been raised. (*People v. Fong Ah Sing,* 64 Cal. 253, 28 Pac. 233; *Kaufman v. State,* 49 Ind. 248; *Howard v. State,* 50 Ind. 190; *Commonwealth v. Choate,* 105 Mass. 451; *State v. Reitz,* 83 N. C. 634; *Walters v. State,* 39 Ohio St. 215; *Watson v. Commonwealth,* 95 Pa. St. 418; *State*

v. *Hardin,* 46 Iowa, 623, 26 Am. Rep. 174; *State v. Watson,* 7 S. C. 63; *State v. Webb,* 6 Idaho, 428, 55 Pac. 892.)

Frank Martin, Attorney General, for the State.

The application by appellant for a new trial was not made within ten days after the rendition of the verdict in the said cause, and that the time for making such application was not extended by order of the court or judge. (Rev. Stats., sec. 7953; *State v. Smith,* 5 Idaho, 291, 48 Pac. 1060; *Connor v. Southern California M. R. Co.,* 101 Cal. 429, 35 Pac. 990; *California Imp. Co. v. Baroteau,* 116 Cal. 136, 47 Pac. 1018; *Burton v. Todd,* 68 Cal. 485, 9 Pac. 663.) A motion is an application for a rule or order made *viva voce* to the court or-judge. Making-out and filing a written application for such rule is not sufficient. The attention of the court must be called to it and the court moved to grant it. (*People v. Ah Sam,* 41 Cal. 645; *Spencer v. Branham,* 1 Cal. 336, 41 Pac. 1095.) We do not believe that counsel c by stipulation set at naught the statutes of this state or pr be a course of procedure different from that provided by the s es. This position we believe to be supported by sound reaso well as by the weight of authority. (*State v. Smith,* 5 I , 291, 48 Pac. 1060; *Connor v. Southern M. R. Co.,* 101 429, 35 Pac. 990; *In re Clary's Estate,* 112 Cal. 292, 44 Pa 569, see p. 570; *Wilter v. Andrews,* 122 Cal. 1, 54 Pac. 6.) The affidavits for continuance presented on behalf of the defendant in this case are entirely inadequate, and do not meet the requirements of the law, and were not such as to warrant the court in granting the continuance. An affidavit for a continuance based on the absence of a material witness must contain the following: 1. That the testimony of the witness is not cumulative, and that the facts sought to be proved cannot be proved by any other witness within the process of the court. (*People v. Ah Fat,* 48 Cal. 61; *People v. Ashnauer,* 47 Cal. 98; *State v. Murphy,* 9 Wash. 204, 37 Pac. 420.) We submit that nowhere in the affidavits does it appear that the testimony of the witness whose presence is desired is not cumulative, or that the facts sought to be proved cannot be proved by some

other witness within the process of the court. 2. That the testimony is material. (*People v. Mullon,* 40 Cal. 648.) This fact does not clearly appear from the affidavits, and the statement is not predicated on the facts required by the preceding requirements. 3. That due diligence has been used to obtain the witness or his testimony, setting forth the character of diligence, whether by exhausting process or otherwise. (*People v. Ashnauer,* 47 Cal. 98; *People v. Winters,* 125 Cal. 325, 57 Pac. 1067; *State v. Craemer,* 12 Wash. 217, 40 Pac. 944; *State v. Lewis,* 56 Kan. 374, 43 Pac. 265; *State v. Corcoran,* ante, p. 220, 61 Pac. 1034; *Reynolds v. Corbus,* ante, p. 481, 63 Pac. 884; *People v. .Weaver,* 47 Cal. 106.) The jury is the judge of the credibility of the witnesses and the weight to be given to the evidence, and a verdict given on conflicting evidence on well-stated rules of this court will not be disturbed on appeal. The evidence in this case was not only conflicting but was amply sufficient to establish the guilt of the defendant beyond a reasonable doubt. (*Simpson v. Remington,* 6 Idaho, 681, 59 Pac. 360; *Bonner v. Powell,* ante, p. 104, 61 Pac. 138; *Sears v. Flodstron,* 5 Idaho, 314, 49 Pac. 11; *Murphy v. .Montandon,* 4 Idaho, 320, 39 Pac. 195; *State v. Haverly,* 4 Idaho, 484, 42 Pac. 506; *Chamberlain v. Woodin,* 2 Idaho, 642, 23 Pac. 177; *People v. Wong Chong Suey,* 110 Cal. 117, 42 Pac. 420; *People v. Ross,* 115 Cal. 233, 46 Pac. 1059; *Smith v. Thomas,* 121 Cal. 533, 54 Pac. 71; *Meyer v. G. W. Ins. Co.,* 104 Cal. 381, 38 Pac. 82; *Livingston v. Packing Co.,* 103 Cal. 258, 37 Pac. 149.)

Per CURIAM.—Appellant was indicted charged with murder, found by the trial jury to be "guilty of murder in the first degree, as charged in the indictment," and sentenced to be executed; moved for a new trial, which was denied, and appealed to this court from the order denying a new trial and from the judgment of conviction. The state moves to dismiss the appeal from the order denying a new trial upon the ground that the application for a new trial was not made within ten days after verdict, as required by law, and the time within which to make said application was not extended by the court or by the judge thereof. The record shows that the verdict was returned and

entered November 1, 1900; that the application for a new trial was made November 30, 1900. The record does not show that the time within which to make the application for a new trial was extended by the court or by the judge thereof. The right of appeal being statutory, a substantial compliance with the requirements of the statute must be shown. The statute (Rev. Stats., sec. 7953) requires the application to be made within ten days after verdict. This not being done, the application was too late, and was properly denied, and the motion to dismiss the appeal from the order denying a new trial should be and is sustained, and said appeal dismissed. (See *State v. Smith,* 5 Idaho, 591, 48 Pac. 1060.)

The state moves to strike the defendant's bill of exceptions from the files upon the ground that "a draft thereof was not presented to the judge for a settlement within ten days after judgment was rendered against appellant, or was not within that period delivered to the clerk of said court for the judge thereof, and that no extension of time for such purpose was given appellant by any court or judge." In the case of *State v. Dupuis,* ante, p. 614, 65 Pac. 65, we held that the power vested by the statute in a court or judge to extend the time within which draft of a bill of exceptions in a criminal case must be presented to the court or judge for settlement cannot be exercised by the parties by stipulation. This rule is undoubtedly correct, and we do not feel authorized to depart from it; yet it appears from the record in this case that the prosecuting attorney entered into a stipulation, which appears in the minutes of the court, with the defendant, to the effect that either party might have sixty days after the close of the trial within which to prepare and present draft of bill of exceptions to the court or judge for settlement. This stipulation was entered into with the knowledge and acquiescence of the court, as shown by the record before us, and we do not feel authorized, under these circumstances, to sustain the motion to strike the defendant's bill of exceptions, and for that reason the same is denied. The cause is now before this court on appeal from the judgment. While it is not our province to review the evidence for the purpose of determining whether

it sustains the verdict or not, we have, nevertheless, carefully examined the evidence, and are of the opinion that it sustains the verdict of the jury; hence the rights of the defendant have not been jeopardized or affected by the failure to make application for a new trial within the statutory time, nor by the dismissal of his appeal from the order denying a new trial.

A number of errors are specified and relied upon by the appellant, many of which we deem it unnecessary to notice. Many of them go to the correctness of the court in permitting the introduction of certain evidence before the jury, all of which we have carefully examined, and we have come to the conclusion that no error prejudicial to the substantial rights of the defendant was committed by the lower court. We will now consider the principal assignments of error made by the appellant. It is contended that the lower court erred in denying the defendant's motion for a postponement of the trial. This motion was made upon three grounds: First. Existence of intense popular excitement and prejudice against the defendant. This court held in *State v. Corcoran*, ante, p. 220, 61 Pac. 1034, that this was not a ground for a continuance, but was ground upon which to base motion for a change of venue. One of the other grounds upon which the motion was made is that the defendant did not have sufficient time in which to prepare for trial. The crime charged was committed on or about October 1, 1900. The indictment was returned into court October 12, 1900, upon which day the defendant was arraigned. On October 15, 1900, the defendant in open court pleaded not guilty to the charge in said indictment. On October 16, 1900, the defendant moved for a continuance, and filed in support of said motion his affidavit, attached to which was the deposition of one John Hickey, taken at the coroner's inquest held upon the body of the deceased, and a number of other affidavits, tending to show the existence of great excitement and prejudice against defendant in the county of Shoshone, where said prosecution was pending. It is shown that the defendant was arrested upon the first day of October, 1900, charged with said crime. It will thus be seen that he had about two weeks in which to prepare for trial, and we do not think that the trial

court erred in refusing to grant the postponement asked for
upon the ground that the defendant had not sufficient time to-
prepare for trial. The remaining ground upon which said
postponement was asked is that the said John Hickey was a
material witness for the defense and that his presence could'
not be procured at the trial. It appears from the affidavit.
of defendant that the principal fact that he expected to prove
by said witness at the trial is, in substance, as follows: That
about 5:30 on the morning of October 1, 1900—the date of
the homicide—the witness Hickey saw the deceased and a
stranger pass down the street, and enter the business place of
the deceased, in which the homicide occurred; that about
thirty or thirty-five minutes afterward witness saw said
stranger come out of the store of said deceased, and close the
door, and appeared to lock the same, after which said stranger
threw something into the street, walked across the street, and
disappeared. We are now asked to hold that the trial court
committed reversible error in denying a postponement of the
trial. A careful examination of the affidavits offered in sup-
port of the motion shows that it is nowhere stated in the same
by the defendant, or anyone else, that the testimony of said
Hickey, when given, is or would be true. The most that can
be said as to the ultimate fact expected to be proven by said'
witness Hickey is that it shows a circumstance tending to
sustain the idea that the homicide might have been committed
by some one other than the defendant. The evidence of said'
Hickey would not, in our opinion, if introduced on the trial,
have changed the result. The granting of a postponement of
a trial is largely within the discretion of the trial court. Un-
der the showing made in the record before us, we do not think
that there was such palpable abuse of discretion as would
authorize this court to reverse the judgment of conviction upon.
that ground.

A number of the assignments of error are based upon the
admission in evidence of two handkerchiefs, which were found
stuffed into the wounds in the neck of the deceased when the
dead body was first found, upon the ground that they had not.

been sufficiently identified, and had been laundered, at the instance of the sheriff, after homicide, for which reason it is contended such handkerchiefs were inadmissible. A careful examination of the evidence convinces us that these handkerchiefs were sufficiently identified, and that they were properly admitted in evidence. One of these two handkerchiefs was marked "ED." Another one was found the next day at the rooming place of the accused, with the same marks upon it. It was proven on the trial that defendant's linen was marked "ED" at the laundry in Wallace, to distinguish it from that of a Mr. Rolands, whose laundry mark was "ER."

One of the assignments of error is based upon the ruling of the trial court in permitting the prosecution to propound the following question to the witness, John F. Moffat, to wit: "Will you kindly tell the court and the jury just what he said, and just what conversation was had between you, at that time?" This question related to a conversation that occurred about seven or eight hours before the homicide, between deceased and the witness, to which the appellant objected on the ground that it was incompetent. Whether the question was competent or incompetent it is unnecessary to decide, as the answer related to a declaration of deceased about a trip that he took the night before, and did not prejudice the rights of the accused before the jury, and, if error, was harmless. A reversal cannot be predicated upon a harmless error.

A number of assignments of error are based upon the action of the court in permitting the state to prove by numerous witnesses the expenditure of money by the accused upon the day of the homicide, and in denying the motions of the defendant to strike out such testimony, and exclude the same from the jury. The evidence shows that the defendant was without money, and hard pressed by creditors for small debts which he owed to them, for some time preceding, and up to the time of the homicide; that the morning of the homicide, and very soon after the same occurred, he purchased a hat and a pair of trousers, and paid numerous small debts that he owed, aggregating more than $100, some of them of long standing.

The evidence shows that deceased was doing a successful business, and was in the habit of carrying money on his person in a wallet in the inside pocket to his vest, and in a pouch carried in his hip pocket, and usually kept money in his safe. His cash-book showed that he should have had on hand more than $1,200 over and above what he had on deposit in the bank, whereas only about $400 in money and checks was found in his business place, in the safe and till, and upon his person, when the homicide was discovered, thus showing a shortage of more than $800. The evidence shows that the business place of the deceased was locked when the homicide was discovered, which was about 9:30 on the morning of October 1, 1900, the same having evidently been locked by the guilty party. Under these conditions the evidence objected to was competent, properly admitted, and the court properly refused to exclude the same from the jury.

Appellant contends that the trial court erred in refusing to compel the state to call Manuel Chuvarria, a witness who appeared before the grand jury, and whose name was indorsed as a witness on the indictment, as a witness before the jury; that said witness knew material facts which were a part of the *res gestae,* for which reason it was the duty of the court to compel the state to call said witness. Conceding that it was the duty of the state to produce said witness, and that the court should have compelled the state to do so, yet the refusal of the court cannot be regarded as reversible error, as the defendant could, by process, compel the attendance of the witness, and call the witness before the jury himself, and it is not shown that he made any effort so to do.

The appellant assigns a number of errors based upon the action of the trial court in admitting in evidence the books of the deceased for the purpose of showing the amount of money that defendant had on hand at the time of the homicide, and in permitting a number of witnesses, who had seen deceased write, some of them having seen him write in the said books, over the objections and exceptions of the defendant, on the ground that the books were not properly identified, and the witnesses were not shown to be qualified to testify to the handwriting of the

deceased. A careful study of the evidence convinces us that these assignments of error are technical and without merit, and that all of the evidence objected to and mentioned in these assignments of error was competent, and properly admitted. While the state was endeavoring to show from the cash-book of the deceased, in connection with the evidence of one of the witnesses, and counsel for the state was discussing an objection made by the defendant to such evidence, said counsel used this language: "As to what transpired there that first day of October in that store, we do not know what occurred there. There was no eyewitness, so far as we know. It is known to God Almighty, Rice, and the spirit of the departed Maily. Circumstances that point to his guilt; among them was his need of money. This defendant was in financial embarrassment prior to this time." Counsel for the defendant objected to the statement so made by counsel for the state, ·which objection the court sustained, and admonished the jury to disregard the same. Thereupon the counsel for the state said, "The statements which I made I think are all borne out by the evidence already adduced." To the latter statement the counsel for the defendant excepted, but the record does not show that the court was asked to admonish the jury to disregard the same. Appellant contends that this conduct on the part of counsel for the state was prejudicial to the rights of the defendant, and was reversible error. It was error for the counsel for the state to make such statements. Attorneys prosecuting criminal cases, whether public officers or employed counsel, should refrain from making remarks like those shown here, it being their duty to see that the defendant has a fair and impartial trial. We would not hesitate to reverse the judgment in this case on account of said statement of counsel for the state, did not a careful study of all the testimony in the record convince us beyond question that, if such statements had not been made, the jury would have found the verdict that they did find. The error complained of did not result in a miscarriage of justice, and substantial justice has been done, under which circumstances the letter and spirit of our· Penal Code forbid a reversal of the judgment.

A number of witnesses testified, over the objections of the defendant, to blood stains on the handkerchiefs found in the wounds of the deceased and upon the wrist and clothing of the defendant. The objection appears to be based on the ground that these witnesses are not shown to have been expert judges of blood, or chemists. It is not necessary that an expert witness, or one skilled in chemistry, be called to prove the existence of blood. The experience of man "from the cradle to the grave" so familiarizes him with the appearance of blood that every witness possessing the full use of his senses, who is competent to testify to other material facts, is competent to testify to the existence of blood, or presence of blood stains. It is only where there is doubt as to whether the blood is that of a human being or that of some inferior animal that the aid of chemistry or expert witnesses is necessary. The objections were technical, and were properly overruled.

Appellant urges that the giving of instructions Nos. 10 and 13, touching "reasonable doubt," was error; but a reading of these instructions shows that they are the usual instructions given in such cases, and that they were proper.

Appellant contends that it was error for the court to give instruction No. 14, which is in the following language: "To authorize a conviction on circumstantial evidence alone, the circumstances should not only be consistent with defendant's guilt, but they must be inconsistent with any other rational conclusion or reasonable hypothesis, and such as to leave no reasonable doubt in the minds of the jury of the defendant's guilt." We see no error in this instruction, and do not see how it could possibly prejudice the rights of the defendant.

The fifteenth instruction given by the court is as follows: "One of the defenses interposed in this case is what is known in law as an 'alibi,' and is a proper and legitimate defense when proven, and consists in showing that at the time the alleged crime was committed the defendant was at a place different from that where the crime was committed. And where the defendant relies upon an alibi for his defense the burden of establishing such alibi is upon the defendant, and, if he succeeds in raising a reasonable doubt in the minds of the jury as to the

fact of his presence at the place and at the time the offense was committed, he is entitled to an acquittal, as it is incumbent upon the prosecution to establish his guilt beyond a reasonable doubt." Appellant contends that this instruction was erroneous, and prejudicial to the defendant; that it was not in accord with the rule laid down by this court in the case of *State v. Webb*, 6 Idaho, 428, 55 Pac. 892. But we cannot agree with this contention. Said instruction was proper.

A careful study of all of the instructions given convinces us that the law of the case was correctly given to the jury, and the rights of the defendant were properly guarded and protected. All instructions asked on behalf of the defendant which were proper were already covered and embraced in the instructions given, and no error was committed by the court in refusing to give any instruction asked by the defendant. Finding no reversible error in the record, the judgment is affirmed, and the cause remanded to the district court, with instructions to take such further proceedings as are necessary to carry the judgment into effect.

ON REHEARING.

(September 17, 1901.)

Upon a careful examination of the petition for a rehearing in the above-entitled cause, we are fully convinced that a rehearing ought not to be granted. A rehearing is therefore denied.