(March 8, 1906.)

## STATE, Respondent, v. PETER A. STEERS, Appellant.

[85 Pac. 104.]

EMBEZZLEMENT BY COUNTY OFFICER—WHEN INFORMATION SUFFICIENT TO CHARGE—PAYMENT TO SHERIFF OF MONEY FOR RETAIL LIQUOR DEALER'S LICENSE—HIS DUTY—INSTRUCTIONS TO JURY AS TO CAUSE OF EMBEZZLEMENT—WHEN NOT ERROR TO REFUSE TO GIVE REQUESTS TO APPELLANT—EMPLOYMENT OF PRIVATE COUNSEL.

1. The crime of embezzlement is committed by an officer of any county, city or municipal corporation of this state when he fraudulently appropriates to his own use any money or property which he has in his possession or under his control by virtue of his trust as such officer. (Rev. Stats., secs. 7065, 7066.)

2. An information that charges a sheriff of a county of this state with willfully, unlawfully, fraudulently and feloniously appropriating to his own use certain money paid to him in his official capacity is sufficient under the provisions of sections 7065, 7066, *supra*.

3. Attorneys other than the attorney general in this court, or the county attorney in the lower court, may assist in the prosecution by and with the consent of the prosecuting officer, and it is not error to allow such appearance in the trial court.

4. When the court on its own motion has fully and fairly instructed the jury on all the essential elements constituting the

crime of embezzlement, it is not error to refuse requests for instructions by counsel for appellant.

5. Instructions in this case examined, and no error appearing. *Held,* sufficient to sustain the judgment.

(Syllabus by the court.)

APPEAL from District Court of the Fifth Judicial District for Bannock County. Hon. Alfred Budge, Judge.

Appellant was convicted of the crime of embezzlement and sentenced to a term of two and one-half years in the state penitentiary. *Judgment affirmed.*

Bowen & Watson and S. C. Winters, for Appellant.

The demurrer to the information should have been sustained, as it does not state whether the money claimed to have been embezzled was the property of Bingham county or of E. C. Shearer, or of whom, and does not in any manner comply with sections 7677, 7678 of the Revised Statutes.

The court should have sustained the objection of defendant to the appearance of Standrod & Terrell, as counsel for the state, as there is no law authorizing such appearance by private counsel in criminal actions, and it is against public policy. (*Conger v. Board of County Commrs.,* 5 Idaho, 347, 48 Pac. 1064.)

*The requested instruction at folios* 293, 294, should have been given as going to the intent, and in connection with the other requested instructions whether or not he was justifiable in his acts; otherwise it would make no difference as to the good faith of an act. (*People v. Weslake,* 124 Cal. 452, 57 Pac. 465.)

J. J. Guheen, Attorney General, Edwin Snow, R. M. McCracken, County Attorney, and Standrod & Terrell, for Respondent.

The information states the facts and circumstances which go to make up the offense defined by the statute. (Rev. Stats., 7065, 7066; *Brady v. Territory,* 7 Ariz. 12, 60 Pac. 698; *People v. Cobler,* 108 Cal. 538, 41 Pac. 401; *People v.*

*Jose De La Guerra,* 31 Cal. 416; *People v. Gray,* 66 Cal. 271,
5 Pac. 240.)

Applications for the postponement of the trial of an action
are addressed largely to the discretion of the trial court, and
it is only in those cases where the discretion has been abused
that the supreme court will review such action. (*People v.
Walter,* 1 Idaho, 386; *State v. Gordon,* 5 Idaho, 297, 48 Pac.
1061; *State v. Rice,* 7 Idaho, 762, 66 Pac. 87; *State v. Rooke,*
10 Idaho, 388, 79 Pac. 82; *State v. Wetter,* 11 Idaho, 433, 83
Pac. 341.)

The next point discussed by counsel for appellant, while
it is not assigned as one of the numerous errors relied upon
"in their order," is that the court permitted Standrod &
Terrell, attorneys in the trial court, to assist in the prose-
cution of the case. The question of attorneys other than the
prosecuting officer assisting in the prosecution has been well
settled by this court. (*State v. Crump,* 5 Idaho, 166, 47 Pac.
814; *People v. Biles,* 2 Idaho, 114, 6 Pac. 120; *State v. Williams,*
4 Idaho, 502, 42 Pac. 511; *People v. Powell,* 87 Cal. 348, 25
Pac. 481, 11 L. R. A. 75; *Territory v. Catton (People v.
Catton),* 5 Utah, 451, 16 Pac. 902; *People v. Tidwell,* 4 Utah,
506, 12 Pac. 61.)

Proof of similar acts is proper proof of intent. (*People v.
Gray,* 66 Cal. 271, 5 Pac. 240; 5 Ency. of Ev. 240.)

The law makes it the duty of the sheriff to collect liquor
licenses. (Rev. Stats., sec. 2157; *State v. McDonald,* 4 Idaho.
468, 40 Pac. 312; Murfree on Official Bonds, sec. 193.) No
demand by the successor of the appellant Steers is necessary,
nor is such demand necessary to be made by the county.
(*Hollingsworth v. State,* 111 Ind. 289; 12 N. E. 490; *State
v. Ring,* 29 Minn. 78, 11 N. W. 233; *State v. Czizek,* 38 Minn.
192, 36 N. W. 457.) The mere failure of a public officer to
turn over and account for public money is *prima facie* evi-
dence of embezzlement. (*Fleener v. State,* 58 Ark. 98, 23
S. W. 1.)

Failure to account at the proper time is embezzlement.
(5 Ency. of Ev. 144, notes.) Even if the moneys had been
illegally collected by Steers, he having collected them under

color of office, he should have paid them into the county treasury, and they did not belong to him in any view, and he had no right to retain them. (*Perry v. Irrigation Dist.*, 127 Cal. 565, 60 Pac. 40-42; *People v. Van Ness*, 79 Cal. 84, 12 Am. St. Rep. 134, 21 Pac. 554.) A public officer cannot dispute the right of the county to the money collected in his official capacity. (*Placer Co. v. Ashton*, 8 Cal. 303; *People v. Jenkins*, 17 Cal. 500; *McKee v. Monterey County*, 51 Cal. 275.

STOCKSLAGER, C. J.—The prosecuting attorney of Bingham county charged appellant with the crime of embezzlement; the charging part of the information is as follows: The said Peter A. Steers, at and within Bingham county and state of Idaho, and within three years prior to the filing of this information, being then and there an officer of Bingham county, state of Idaho, charged by law with the receipt, safekeeping and transfer of public moneys, to wit: The sheriff in and for Bingham county, state of Idaho, and by virtue of his said office, then and there a receiver of public moneys, to wit, a collector of licenses or license taxes, and authorized by law to receive said moneys, and then and there acting as such officer, did then  and there willfully, unlawfully, fraudulently and feloniously, without authority of law, appropriate to a use and purpose not in the due and lawful execution of his trust, to wit, to his own use, certain money paid to and received by him while acting in his official capacity as said sheriff, to wit, the sum of $500, lawful money, the same being so paid to and received by him for said Bingham county, state of Idaho, by and from E. C. Shearer on or about the twenty-third day of May, 1904, for a license to sell spirituous, vinous, malt and intoxicating liquors within Bingham county, state of Idaho. To this information a demurrer was filed, to wit: "1. The facts therein stated do not constitute a public offense. 2. Said information does not substantially conform to the legal requirements of sections 7677, 7678 and 7679 of the Revised Statutes of Idaho, particularly in this, to wit: (a) Said information does not con-

tain a statement of the acts constituting the offense attempted
to be charged in such manner as to enable a person of common
understanding to know what is intended. (b) It does not
state either specifically or approximately the date of the com-
mission of the alleged crime. (c) It is not direct or certain
in stating the time of the commission of the offense or in stat-
ing whether or not said offense was committed while the de-
fendant was sheriff. of Bingham county, Idaho, or in stating
whether or not the $500 referred to therein ever belonged
to or was the property of said Bingham county, or whether
said $500 was at the time of its alleged misappropriation the
property of the person named in said information as being
the person who paid said money to the defendant. Nor is
said information direct or certain in stating that the said five
hundred dollars or any part thereof was ever in the pos-
session of the defendant or under his control by virtue
of any trust or of his official position as sheriff of
said Bingham county. Nor is said information direct or
certain in stating whether or not any license was ever issued
or granted by said Bingham county to said person who is
alleged to have paid said $500 to the defendant, or whether
a license was refused or denied. 3. In the respects stated in
subdivision c of the foregoing paragraph 2, said information
does not clearly and distinctly set forth the act or omission
charged as the offense.''

In the minutes of the court of date April 19, 1905, it
is shown that a motion to set aside the information was
submitted to the court and overruled and on the same day
the demurrer was overruled. On the twenty-fifth day of
April, 1905, a motion for a continuance was denied. On
the same day a motion for change of venue was submitted
to the court and granted. On the fourth day of May, in
Bannock county, a motion and affidavit for a continuance
of the cause, also a motion to postpone the time of trial to
a later date; both of these motions were overruled. On the
same day a jury was impaneled, and on that and the suc-
ceeding day a trial was had which resulted in a verdict of
guilty as charged in the information, and on the eleventh day

of August, 1905, appellant was sentenced to serve a term of two and one-half years in the state penitentiary.

Counsel for appellant insists that the demurrer to the information should have been sustained, as it does not state whether the money claimed to have been embezzled was the property of Bingham county or of E. C. Shearer, and does not in any manner comply with sections 7677 and 7678, of the Revised Statutes of Idaho. Subdivision 2, section 7677, provides: "A statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." The information informs the defendant that he, as sheriff of Bingham county, has received $500 from E. C. Shearer for a license to sell spirituous, vinous, malt and intoxicating liquors within said Bingham county, state of Idaho: that he has, as such sheriff, unlawfully, willfully, fraudulently and feloniously appropriated to his own use such sum of money; that such willful, unlawful, fraudulent and felonious appropriation was made about the twenty-third day of May, 1904. An examination of section 7678 will disclose that the information fully complies with its requirements. The purpose of these two sections of the statute, it seems, should be so easily understood, and a fair consideration of them, it occurs to us, is that when the indictment or information informs the accused that on or about a date specified, the grand jury by indictment, or the prosecuting attorney by information, charges the accused of some crime known to our statute, that the alleged unlawful act was done willfully, unlawfully and feloniously, the language used in the charging part of the complaint, information or indictment indicating to the accused the particular crime with which he is charged, if the instrument sufficiently informs the accused of the time, place, circumstances and conditions of his alleged unlawful act, and that it is unlawful, wrongful, malicious and felonious, or other words used by the statute to indicate the particular crime charged, then the accused is informed what he must prepare to meet on the trial. We do not find the information in the case at bar lacking in any

of the essential elements for a charge of the crime of embezzlement under our statute. Section 7065 of the Revised Statutes defines embezzlement as follows: "Embezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted." Section 7066 of the Revised Statutes provides how and when an officer, public or private, is guilty of embezzlement as follows: "Every officer of this state, or of any county, city, or other municipal corporation or subdivision thereof, and every deputy, clerk, or servant of any such officer, and every officer, director, trustee, clerk, servant, or agent of any association, society, or corporation (public or private), who fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust, any property which he has in his possession or under his control by virtue of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement."

We find no error in the order of the court overruling the demurrer. (See *Brady v. Territory*, 7 Ariz. 12, 60 Pac. 698, *People v. Cobler*, 108 Cal. 538, 41 Pac. 401; *People v. Jose De La Guerra*, 31 Cal. 416.) It is also urged by counsel for appellant that the court erred in "denying the defendant time to prepare for trial." It is shown that the case was removed from Bingham to Bannock county for trial on application of appellant, and that the clerk of Bingham county had complied with section 7773 of the Revised Statutes, by transmitting all the papers and necessary records to the clerk of Bannock county. Counsel for appellant say "defendant did not know that they were received by the clerk of the court of Bingham county until the second day of May, 1905, and the court, at 7:30 o'clock P. M. of May 2d, set the case for trial on the fourth day of May, 1905, at 10 o'clock A. M., thus giving the defendant one day in which to get ready for trial, and that the defendant is entitled to at least two days in which to prepare for trial." Section 7790 of the Revised Statutes provides: "After his plea, the defendant is entitled to at least two days to prepare for trial." It is shown that the plea of not guilty was entered in the district court of

Bingham county on the nineteenth day of April, 1905, and the case set for trial in that county for the twenty-first day of April, 1905, at 10 o'clock A. M. It will be observed that section 7790, *supra*, does not say defendant shall have at least two days to prepare for trial after the case is set for hearing, but at least ten days after plea, hence appellant had much more than the statutory time to prepare for trial. We are not prepared to believe, if a proper showing had been made that it was impossible for the defendant to secure the presence of his witnesses at the time set for trial, the learned judge below would not have given such time as seemed necessary for him to procure their attendance; he did furnish the court with an affidavit that his witnesses all lived in Bingham county, and that they could not be reasonably procured within the time set for the trial of said cause. This affidavit was met by that of Robert M. McCracken, the prosecuting attorney of Bingham county, in which he testifies that all the witnesses for the prosecution were procured in time for the trial, and that the witnesses for the defense could have been procured within the time if a proper effort had been made by defendant. Applications of this character are largely within the discretion of the court, and unless it is shown that there has been an abuse of this discretion, the judgment will not be reversed. We find no abuse of discretion in the orders overruling the motion for postponement of the trial, or a continuance of the case. (*People v. Walter,* 1 Idaho, 386; *State v. Gordon,* 5 Idaho, 297, 48 Pac. 1061; *State v. Rice,* 7 Idaho, 762, 66 Pac. 87; *State v. Rooke,* 10 Idaho, 388, 79 Pac. 82; *State v. Wetter,* 11 Idaho, 433, 83 Pac. 341.)

Counsel for appellant next urge as error the refusal of the court to sustain the objection of defendant "to the appearance of Standrod & Terrell, as counsel for the state, as there is no law authorizing such appearance by private counsel in criminal actions, and it is against public policy." Our attention is called to *Conger v. Board of Commissioners,* 5 Idaho, 347, 48 Pac. 1064. This case holds that individual members of the board of county commissioners cannot make a contract to bind the county. "It is the county commissioners acting as

a board that are given that authority'' (that is, the authority to employ counsel). So says that opinion. This question has been before this court in *State v. Crump,* 5 Idaho, 166, 47 Pac. 814; *People v. Biles,* 2 Idaho, 114, 6 Pac. 120; *State v. Williams,* 4 Idaho, 502, 42 Pac. 511; *People v. Powell,* 87 Cal. 348, 25 Pac. 481, 11 L. R. A. 75; *People v. Lidwell,* 4 Utah, 506, 12 Pac. 61; *Territory v. Catton (People v. Catton),* 5 Utah, 451, 16 Pac. 902. We find no error in denying this objection.

The next assignment is based on the ruling of the court to the following questions: ''Now, I will ask you, witness, to examine that record again, and say whether or not it contains any items of moneys received for liquor license issued to the Montana saloon, November 1, 1904?'' The record shows that the witness was one W. W. Kinney, who was deputy sheriff under appellant, and as such deputy issued the receipt for the money claimed to have been embezzled by appellant; that he turned the check given him by E. C. Shearer for license over to appellant the same night or the next morning after it was received by him. The record referred to in the question was what is known as the ''license register.'' After examining the record, witness testified that ''there was no record in the book for the $501 for liquor license for Mr. Shearer; the receipt given Mr. Shearer by Kinney had been introduced in evidence by the prosecution; other questions of similar import, which referred to other licenses were asked, objected to by appellant, and the witness permitted to answer, all of which is alleged as error prejudicial to appellant. It is apparent that the purpose of the examination of the witness who testified that he was the deputy sheriff at the time and before the alleged embezzlement of the $501, paid by Shearer for license, and was familiar with the record of licenses kept by the sheriff, and that it was the only book kept for ''recording licenses'' while he was deputy sheriff, was to show that the book did not contain an account of certain licenses. The entire record was in evidence, and counsel for appellant had the opportunity to examine it and ascertain whether the witness testified truthfully or otherwise, and

to cross-examine him to any extent he saw fit. Counsel for appellant insists that the book of record was the best evidence. We agree with this contention, but there was no error in having the witness familiar with the record point out to the jury the particular instances wherein the record was deficient in showing that which it was intended it should show. Appellant was there to assist his counsel in showing any error or falsehood in the evidence of the witnesses relative to this record. We find no error in the ruling of the court in this particular.

It is next insisted that the court erred in permitting George S. Gagon, who it was shown was clerk of the board of commissioners of Bingham county during the entire term of appellant as sheriff of that county, and for a long time prior thereto, to answer the following questions: ''What was your custom, Mr. Gagon, in receiving bonds of this character; what did you do with them?'' He answered that he delivered them in the sheriff's office, and continued: ''But I can't say I delivered this bond there.'' It was perhaps immaterial, as well as incompetent, what his custom may have been, but we cannot see how the appellant could be prejudiced by what he said his custom was, especially when he says he can't say he delivered the one in question there. Appellant urges that the court should have sustained the objection ''to the introduction of the minute record of the board of commissioners, for the reason that these entries were made after defendant had retired from office and could not bind him, as he was not even present when they were made, and they tend to prejudice the minds of the jury against the defendant.''

The record introduced is as follows, in the matter of the shortage of Peter A. Steers, former sheriff: ''On this day it was ordered by the board of county commissioners that R. M. McCracken, county attorney, ascertain the amount of money paid to Peter A. Steers for liquor license, and which has not been paid over to the county by Steers, and to demand the amount of money so ascertained. Ordered that if the amount of liquor license money collected by Steers is not turned over to the county upon demand, the county attorney is ordered, authorized and directed to bring an action for said board of

county commissioners on behalf of said county against said Steers and his bondsmen.''

We know of no provision of our statute that requires the presence of the sheriff or any other officer when the county commissioners are making up their record. This was simply an order requiring the county attorney to ascertain whether appellant was delinquent in the settlement of his accounts, and if so, he was required by the order to enforce collection by suit against appellant and his bondsmen. How could this record prejudice jurors against appellant? If the county attorney found no deficiency, his duty was easy; he had only to report that fact to the commissioners, and his labors were ended. The introduction of this record may have been immaterial, but certainly not prejudicial. It is insisted that the court erred in not permitting County Attorney McCracken to answer the following questions on cross-examination: "Q. Didn't they (meaning the agent of the bonding company, defendant and some citizens of Blackfoot) make a request of you to let this matter stand until the civil suit was decided to see whether he (Steers) was owing Bingham county anything? Q. Didn't Mr. King as agent of the bonding company, and also several citizens in Blackfoot, request you to delay proceedings until matters were settled in the civil court?'' In what way could it benefit appellant if the agent of the bonding company and every citizen of Blackfoot made the request of the witness as above indicated? Could or would it excuse him from the performance of his sworn duty? If he believed any officer of his county was guilty of the crime of embezzlement, or any other crime, the law fixes his duty and the agent of the bonding company, the citizens of Blackfoot, nor even the board of commissioners can in any way control his action. There was no error in sustaining an objection to this question. It is shown that appellant offered to show by E. H. Watson, a practicing attorney of this court, that said Watson was attorney for defendant, and advised the defendant not to turn over the money in question to the county unless the court should hold it to be county money, and in support of this advice, defendant offered in evidence

a certain judgment-roll, where the district court of Fremont county held that such moneys were not county moneys, and held the sheriff liable on his bond for so treating it. If parties charged with the safekeeping of county money could be excused from their wrongful and unlawful acts on the theory alone that their attorneys had advised them to withhold the money collected in their official capacities, then the criminal laws of the state would be a farce, and the next legislature should be importuned to repeal all laws enacted to enforce faithful and honest performance of public duties. Counsel for appellant says, ''Shearer did not file his application or bond for license until some time after the defendant went out of office. The law requires the officer to turn over the money when the license is sold and not before.'' Granting all this to be true, what right had defendant to withhold this money? Why did he not pay it over to his successor in office if his term as sheriff had expired; or if he had doubts as to the proper disposition of the money alleged to have been embezzled, why did he not deposit it with the clerk of the district court with instructions to safely keep it until it was determined what disposition should be made of it? Can it be supposed that a prosecuting officer would have filed his information charging appellant with embezzlement had he been informed that the money was on deposit with the clerk or in any other safe place, and where it could be had when it was finally determined to the satisfaction of the appellant where the money should go? Even if he had filed his information and appellant had been prepared to show good faith and honest purposes by placing the money in the hands of any reliable person to be paid over as directed by the court, could a jury be found in Bingham or Bannock county that would have said he was guilty of embezzlement or any other crime? Certainly not. 'If such conditions had been shown to exist, the court would have instructed the jury to return a verdict of not guilty; at least that would have been its plain duty. But if the advice of his counsel under any circumstances could be an excuse for withholding the money, it could not aid him under the showing made by the record in this case.

We find the money was paid for a license to retail liquors in Bingham county by Mr. Shearer to the deputy sheriff of Bingham county, on the twenty-third day of May, 1904. The deputy sheriff testifies that he turned the money over to appellant that evening or next day. Shearer continued his saloon business, and appellant did not seek the advice of his counsel until after demand had been made on him by the county attorney for the payment of this money, and after the expiration of his term of office. Appellant knew it was not his money; he also knew it was not Shearer's money, as he was conducting the business for which he had paid the money for license to so conduct. An officer cannot avoid the plain mandate of the statute in this way. The advice of his counsel long after the alleged crime was committed cannot avail him; if so, it would be impossible to convict an officer charged with the crime of embezzlement.

It is next urged that the court erred in not admitting in evidence the judgment-roll in a certain case theretofore tried in the district court of Fremont county, wherein it is claimed that the court found that money paid to the sheriff under similar circumstances to the case at bar was not the property of the county. We know of no rule of law that would make such evidence competent. It might be available in an effort to induce the court to instruct the jury that such money was not the property of the county, but, even then, the court might take a different view of the law and refuse to give such instructions; then the question could be presented to this court as an error of law occurring at the trial, but if appellant desired to show by this record that he was withholding the payment of the money without criminal intent, he did not bring himself within the rules of law prescribed for the introduction of this evidence, and the record would not have aided him owing to the difference in the facts. In justice to the learned judge who presided over the court at the time the findings and judgment above referred to were made and entered, we feel it our duty to say the facts in that case were widely different from the one at bar. Neither the county nor state was a party to the litigation; it was a

suit of an executor of a will against the sheriff of Fremont county and his bondsmen. The complaint alleged that the plaintiff as executor, etc., had commenced an action against Frank Brady and A. S. Anderson to recover the sum of $444.64 on a promissory note in favor of plaintiff testator. Summons was issued, and thereafter a writ of attachment was issued and placed in the hands of Hanson with instructions to serve said papers and attach the sum of $425 in his, said Hanson's, possession, belonging to Frank Brady, one of the defendants, etc. That in pursuance of said writ of attachment, said Hanson by his deputy, D. P. Rich, did attach the sum of $425, lawful money belonging to said Brady. Later a judgment was secured by plaintiff against the defendants for the sum of $496.61 and costs. That plaintiff demanded of said Sheriff Hanson said money held by him under the writ of attachment, and also placed a writ of execution in his hands, but that said plaintiff Hanson failed and refused to turn over the money so attached. Then it is shown that another execution was placed in the hands of the said defendant Hanson and frequent demands were made for the money alleged to be in his hands. The answer denies that Hanson, as sheriff, or otherwise, had any money belonging to Frank Brady, but alleges that on the twelfth day of June, 1901, Brady paid to Hanson, as sheriff, the sum of $425 to apply on a retail liquor dealer's license from June 2, 1901. On August 10, 1901, a further sum of $75 was paid by said Brady to said Hanson as sheriff, and that said money as above paid to Hanson as sheriff was not the money of Brady after it was paid, but belonged to the license moneys of the county of Fremont. Hanson testified that he had received a partial payment from Brady for a liquor license, but did not return the money as county money for the reason he did not have full payment and was expecting the balance; that he gave Brady a receipt for the $425 for partial payment on liquor license, and that the attachment was served before the balance of the $75 was paid. The jury returned a verdict for plaintiff. Without an expression of our opinion of the justice or legality of this verdict and judgment, it is

readily seen that the facts were very different from the case at bar. In *Beeman v. Hanson et al.*, the controversv was between Beeman and Hanson as sheriff. The county did not intervene and set up any right to the money. It was shown that the full amount of money had not been paid and a receipt given for only partial payment for a liquor license for one year from June 2, 1901. Before the payment was fully made, an attachment was issued and the sheriff made his return showing the above facts. Not so in the case under consideration. The entire payment had been made by Shearer and the sheriff had given his receipt therefor. Shearer was permitted to conduct his business during the balance of the term of office of appellant. No controversy between the sheriff (appellant) and anyone else by reason of a writ of attachment or other proceedings questioning the ownership of the money in his hands paid by Shearer, no one demanding it excepting the county through its county attorney, and that demand was that the money should be paid to the county for the purposes for which it was paid to him for the county by Shearer, and for which Shearer had had the benefit by conducting his business. Objections are urged to the giving of certain instructions and refusal to give certain requests of counsel ·for appellant. A careful examination of the instructions convinces us that they fairly state the law on all the material issues involved in the prosecution, and in our view of the case the requests of counsel for appellant were properly rejected by the court. It is apparent from the instructions given by the court and the character of the evidence submitted by the prosecution that the case was prosecuted and the jury instructed on one theory alone, and that was that by the acts of appellant in collecting and receipting for the money from Shearer and permitting him to continue his business without a full compliance with the statutory requirement, and failing and refusing to turn the money into the proper channel before and after his term of office had expired, constituted the crime of embezzlement. If we are to be guided by the character of evidence offered on behalf of appellant, together with the requests for instructions prepared and sub-

mitted to the court to be given to the jury as the law of the case, the theory was that the appellant could withhold the money paid him by Shearer for the express purpose of procuring a retail liquor dealer's license until the court should determine to whom the money belonged, thus avoiding the penalty of wrongfully withholding the money and escaping a prosecution for the crime of embezzlement. The law does not encourage such conduct by the officials of the state. It requires honesty in all branches of the public service. We think the judgment should be affirmed, and it is so ordered.

Ailshie, J., and Sullivan, J., concur.