(July 5, 1924.)

## STATE, Respondent, v. DAVID L. HOAGLAND, Appellant.

[228 Pac. 314.]

CRIMINAL LAW—HOMICIDE—INSANITY—MOTION FOR CHANGE OF VENUE —MOTION FOR CONTINUANCE—ABSENCE OF WITNESSES—SHOWING— DISCRETION OF TRIAL COURT—VOIR DIRE EXAMINATION—JURORS— BIAS—REJECTION OF JURORS—PREJUDICE—INDORSEMENT OF NAME OF WITNESS ON INFORMATION DURING TRIAL—DUE DILIGENCE— EVIDENCE — EXPERT AND NONEXPERT WITNESSES — NEW TRIAL — NEWLY DISCOVERED EVIDENCE—INSTRUCTIONS—APPEAL—RECORD— REVIEW.

1. To require a change of venue under C. S., sec. 8888, providing for a change of venue on the ground that a fair and impartial trial cannot be had in the county where the information is filed, it must appear that the prejudice against the accused is so great as to prevent a fair and impartial trial, and it is not sufficient to show merely that great prejudice exists against him.

2. A motion for change of venue is addressed to the sound discretion of the trial court and its ruling thereon will only be disturbed where it affirmatively appears that such discretion has been abused.

3. An application for continuance is addressed to the sound judicial discretion of the trial court and its ruling will not be disturbed unless such discretion is abused. Showing in support of application for continuance examined, together with other matters ap-

pearing in the record, and *held* insufficient to justify the granting of the relief sought.

4. It is improper to ask a venireman whether he would be governed by an assumed principle of law if so instructed by the court, as the juror is bound, under C. S., sec. 8971, to take the law as given by the court.

5. The scope of a *voir dire* examination of veniremen by counsel in a criminal case is a matter which rests in the sound discretion of the trial court. Certain questions propounded to veniremen considered and found to be beyond what is pertinent and proper in such examination, but *held* that prejudicial error was not committed.

6. Where, in a prosecution for homicide, the only contested issue was whether or not defendant was insane at the time he killed deceased, and a juror objected to on the ground of bias was not interrogated as to such issue, the fact that he stated that he had an opinion with regard to the case which it would take evidence to remove, which opinion had been formed from newspaper reports of the homicide and from statements made by others, was insufficient to establish his disqualification.

7. No party can acquire a vested right to have a particular member of the panel sit upon the trial of his cause until he has been accepted and sworn. It is enough that it appear that the cause has been tried by an impartial jury, and where several peremptory challenges were waived by the prosecution, upon any one of which the prosecution might have excused the venireman, the defense cannot complain that the court sustained the challenge, especially where reasonably sufficient grounds existed therefor.

8. Where counsel for the prosecution requested a witness to point out on his (counsel's) body the places where the bullet entered the body of deceased and where it came out, the objection of appellant thereto was properly overruled.

9. Under C. S., sec. 8810, requiring the prosecuting attorney to indorse on the information the names of all witnesses known to him, at the time of filing the same, and at such time before the trial of any case, as the court may rule or otherwise prescribe, indorse thereon the names of such witnesses as shall then be known to him, it was not error to permit the prosecuting attorney to indorse the name of a witness on the information after the commencement of the trial, where it is shown that such witness was unknown to him prior to that time, especially where it is only discovered upon the *voir dire* examination of a venireman that he is a material witness for the prosecution and due diligence is used in asking permission to indorse his name on the information.

10. Where a venireman testified on his *voir dire* examination that he had had conversations with the accused relative to the deceased, and his name was permitted to be indorsed on the information by the court, and his testimony showed that accused was the only one present at these conversations, and accused had one day in which to prepare for and meet such testimony, a motion for a continuance on the ground of surprise was properly denied, especially where an insufficient showing of surprise was made.

11. Where a witness was called as an expert by the defendant, who testified that he had had nothing more than a casual acquaintance with the defendant, had never examined him nor treated him for any illness and whose qualifications as an expert were not shown and who testified merely that accused might have a pressure on the nerve centers or centers of control of the brain as a result of an injury received prior thereto, such witness was incompetent to testify as an expert as to accused's insanity at the time of the homicide, where it is not shown by competent evidence that such pressure on the brain would cause insanity.

12. *Held,* that where evidence was introduced as to nervousness of the right arm of accused as a result of an injury but such condition was not shown by competent evidence to indicate insanity, a motion to strike the evidence relating to the injured arm was properly sustained.

13. It is not error for the court to refuse to give an instruction requested by the defendant where the same is fully covered by the instructions given.

14. *Held,* under the facts of this case, that the showing in support of the motion for a new trial upon the ground of newly discovered evidence was insufficient and that the motion was properly denied.

APPEAL from the District Court of the Seventh Judicial District, for Valley County. Hon. B. S. Varian, Judge.

Judgment of conviction of murder in the first degree and sentence of death. *Affirmed.*

Carl A. Burke, Barber & Barber and Eldridge & Hiler, for Appellant.

Failure to grant defendant's motion for change of venue was an abuse of the trial court's discretion. (Art. 1, secs. 7,

18, Const.; C. S., sec. 8888; *State v. Lundhigh,* 30 Ida. 365, 164 Pac. 690, 694; *People v. Suesser,* 132 Cal. 631, 64 Pac. 1095; *State v. Perkins,* 36 S. D. 579, 156 N. W. 73; *State v. Crafton,* 89 Iowa, 109, 56 N. W. 257; *Richmond v. State,* 16 Neb. 388, 20 N. W. 282; *Cox v. State,* 90 Tex. Cr. 106, 234 S. W. 72; *State v. Weisengoff,* 85 W. Va. 271, 101 S. E. 450; *Streight v. State,* 62 Tex. 453, 138 S. W. 743; *Coffman v. State,* 62 Tex. Cr. 88, 136 S. W. 779; *People v. Pfanschmidt,* 262 Ill. 411, Ann. Cas. 1915A, 1171, 104 N. E. 804; *Tennison v. State,* 79 Miss. 708, 31 So. 421, and cases cited; 16 C. J. 203.)

The following question properly states the law: "If the defendant should introduce evidence as to his insanity, which evidence is sufficient to raise in your mind a reasonable doubt, would you then require the state to prove he were sane beyond a reasonable doubt, if the court should instruct you that was the law?" And the court's action in sustaining state's objection thereto was prejudicial to the rights of the defendant. (*State v. Larkins,* 5 Ida. 200, 211, 47 Pac. 945; *State v. Shuff,* 9 Ida. 115, 72 Pac. 664; *State v. Hurst,* 4 Ida. 345, 39 Pac. 554; *State v. Wetter,* 11 Ida. 450, 83 Pac. 341; *State v. Rogers,* 30 Ida. 271, 163 Pac. 912; Underhill, Crim. Evidence, p. 324; *Davis v. United States,* 160 U. S. 469–483, 16 L. ed. 353, 40 L. ed. 499; 2 Bishop's Crim. Procedure, 2d ed., sec. 1049.)

Jurors Boyd Smith, G. E. Scheline, Henry Cross, Theodore Hoff and Clayton Downend were clearly disqualified under C. S., secs. 8930, subd. 8, and 8939; and the court's action in disallowing defendant's challenge to said jurors was prejudicial error and in violation of his constitutional right to a fair and impartial jury. (Art. 1, secs. 7 and 18, Const.; *State v. Caldwell,* 21 Ida. 663, 123 Pac. 299; *People v. Sullivan,* 59 Cal. App. 633, 211 Pac. 467; *People v. Khairdim,* 39 Cal. App. 695, 179 Pac. 713; *People v. Wells,* 100 Cal. 227, 34 Pac. 719; *People v. Riggins,* 159 Cal. 113, 112 Pac. 862; *People v. Helm,* 152 Cal. 532, 93 Pac. 99; *People v. Miller,* 125 Cal. 44, 57 Pac. 771; *People v. Weil,* 40 Cal. 268; *People v. Johnston,* 46 Cal. 78; *People v. Edwards,* 41

Cal. 641; *People v. Gehr,* 8 Cal. 354; *Coughlin v. People,* 38 Mich. 739; *State v. Brown,* 15 Kan. 400; *People v. Casey,* 96 N. Y. 115; *Gallagher v. State,* 40 Tex. Cr. 296, 50 S. W. 388; *State v. Williams,* 28 Nev. 395, 82 Pac. 353; *State v. Dwyer,* 29 Nev. 421, 91 Pac. 305; *State v. Roberts,* 27 Nev. 449, 77 Pac. 598; *State v. Salgado,* 38 Nev. 64, 145 Pac. 920, 150 Pac. 764; *Conway v. Quinton,* 1 Utah, 215; *Childs v. State,* 45 Ark. 165; 16 R. C. L. 261, par. 79; 17 Ency. Proc. & Prac., p. 375.)

Relationship of juror with one of witnesses subpoenaed by defendant is not ground for challenge because of implied bias. (C. S., sec. 8930; *State v. Gordon,* 5 Ida. 297, 48 Pac. 1061.)

It was improper to permit prosecution to subpoena juror when called to jury-box and then sustain challenge for an implied bias directed at such juror. (C. S., sec. 8930; 16 R. C. L., p. 262, par. 79.)

It was error to permit the indorsement of the name of a material witness on the information after the trial had started without allowing defendant sufficient time to prepare defense. (C. S., sec. 8810; *State v. Wilmbusse,* 8 Ida. 608, 70 Pac. 849; *State v. Crea,* 10 Ida. 88, 76 Pac. 1013; *State v. Barber,* 13 Ida. 65, 88 Pac. 418; *Gandy v. State,* 24 Neb. 716, 40 N. W. 302, 44 N. W. 108; *Stevens v. State,* 19 Neb. 647, 28 N. W. 304; *Sweenie v. State,* 59 Neb. 269, 80 N. W. 815.)

A practicing physician shown to have had experience in brain diseases is competent to give an opinion as to the effect of a pressure on the brain and its bearing on the question of insanity. (Wharton & Stille's Medical Jurisprudence, p. 403; *Lowe v. State,* 118 Wis. 641, 96 N. W. 417; *Holland v. State,* 80 Tex. Cr. 637, 192 S. W. 1070; *Schuman v. State,* 106 Ark. 362, 153 S. W. 611.)

A layman who is shown to have known defendant for a period of three years, during which time he had had various business dealings and lodge associations with the defendant, is competent to give his opinion as to the sanity or insanity

of the defendant. (*State v. Shuff, supra; State v. Hurst, supra;* Underhill, Crim. Evidence, 3d ed., p. 374.)

A. H. Conner, Attorney General, Jas. L. Boone, Assistant, and Karl Paine, for Respondent.

The court did not err in overruling the motion for a change of venue. (*State v. Reed,* 3 Ida. 754; *State v. Gilbert,* 8 Ida. 346; *State v. Rooke,* 10 Ida. 388, 79 Pac. 82.)

The court did not err in overruling the motion for a continuance. (C. S., sec. 8910; *State v. Cannon,* 26 Ida. 182, 140 Pac. 963; *State v. Fleming,* 17 Ida. 471, 106 Pac. 305.)

Instruction No. 24 correctly defined the present rule as to the burden of proof on the issue of insanity. (*State v. Wetter,* 11 Ida. 433, 83 Pac. 341; *State v. Rogers,* 30 Ida. 259, 163 Pac. 912.)

The court did not err in sustaining the state's objection to the hypothetical question propounded to Dr. Rutledge. (Wigmore on Evidence, 2d ed., sec. 679; *In re Dolbeer's Estate,* 149 Cal. 227, 9 Ann. Cas. 795, 86 Pac. 695; *Commonwealth v. Rich,* 14 Gray (Mass.), 335; *Fayette v. Chesterville,* 77 Me. 33; *Russell v. State,* 53 Miss. 367; *Montgomery v. Commonwealth,* 88 Ky. 509, 11 S. W. 475; *State v. Larkins, supra.*)

The judgment would not be reversed on this ground if error were conceded. (22 C. J. 526; *Austin v. Brown Bros. Co.,* 30 Ida. 167, 164 Pac. 95.)

Defendant waived his challenge of the juror, Theodore Hoff. (*Davey v. Janesville,* 111 Wis. 628, 87 N. W. 813.)

Insanity being the only issue in the case, the defendant cannot complain of the jury if all of the members were qualified to try that issue. (*Keffer v. State,* 12 Wyo. 49, 73 Pac. 556; *State v. Gould,* 40 Kan. 258, 19 Pac. 739; *State v. Morrison,* 67 Kan. 144, 72 Pac. 554; *State v. Sorter,* 52 Kan. 531, 34 Pac. 1036.)

The jurors were otherwise qualified to fairly and impartially try the defendant. (24 Cyc. 280, 281; *Tuggle v. State* (Okl. Cr.), 209 Pac. 187; *McCann v. State,* 20 Ariz. 489, 182 Pac. 96; *Horn v. State,* 13 Okl. Cr. 354, 164 Pac.

683; *Reynolds v. United States*, 98 U. S. 145, 25 L. ed. 244; *Holt v. United States*, 218 U. S. 245, 20 Ann. Cas. 1138, 31 Sup. Ct. 2, 54 L. ed. 1021; *State v. Caldwell*, 21 Ida. 663, 123 Pac. 299; 17 Standard Proc. 371 et seq.; *State v. Rodriguez*, 23 N. M. 156, 167 Pac. 426, L. R. A. 1918A, 1016; *Brady v. Territory*, 7 Ariz. 12, 60 Pac. 698; *Johnson v. State*, 1 Okl. Cr. 321, 18 Ann. Cas. 300; *State v. Simas* (Nev.), 62 Pac. 242.)

The defendant was not prejudiced by the exclusion from the jury of the veniremen E. A. Williams and Solly Collender. (24 Cyc. 315; 16 R. C. L. 291; *State v. Rodriguez, supra; State v. Gordon*, 5 Ida. 297, 48 Pac. 1061.)

BUDGE, J.—Appellant was convicted in Valley county of murder in the first degree and his punishment was fixed by the jury at death. From the judgment of conviction and from an order overruling a motion for a new trial this appeal is taken.

Appellant first assigns as error the action of the court in denying his motion for change of venue. The motion is supported by the affidavits of appellant, his son, C. R. Hibbard, Esq., one of his attorneys, and three residents of Valley county.

In his affidavit appellant avers that on the morning of October 14, 1922, the date of the alleged murder, he was rushed to Boise, Ada county, in an automobile driven by W. C. Hurd, deputy sheriff of Valley county, for the reason that the officials there feared mob violence on the part of the residents of the town of Cascade and Valley county generally; that the "Cascade News," a newspaper published in Valley county, by articles published therein, had inflamed the minds of the people of Cascade and Valley county generally against the appellant; that it had published a purported account of the alleged murder and also resolutions passed by certain associations of Valley county lauding the character and position of W. D. Patterson, the deceased, and that on account of the widespread feeling against appellant he could not secure a fair and impartial trial in Valley county.

In the affidavit of C. R. Hibbard, Esq., one of appellant's attorneys, it is alleged that when the preliminary examination was held in October, 1922, appellant was brought from the Ada county jail to Cascade; that a circuitous route was taken to avoid going through the main streets of Cascade; that appellant was taken to the courthouse where a considerable crowd had assembled; that the sheriff and deputy sheriff spent several minutes in and around the courthouse, which, to affiant's belief, was for the purpose of determining whether it would be safe to proceed with the preliminary hearing; that there was no demonstration of mob violence during the hearing, but it was apparent that the minds of the people were greatly prejudiced against appellant; that affiant, after said preliminary examination, requested the sheriff of Valley county to allow appellant to remain in Cascade overnight, but, notwithstanding the fact that it was 7:30 P. M., and there were approximately ninety miles of mountainous roads to travel between Cascade and Boise, the sheriff deemed it necessary for appellant's safety to drive him back to Boise that night; that affiant, in November, 1922, talked with several business men at Cascade who informed him that they did not think appellant could have a fair and impartial trial in Valley county, but they would not make affidavits to this effect, and that others, due to W. D. Patterson's social and financial standing in the county, were afraid to make such an affidavit. Affiant corroborates and sets forth in detail the articles published in the "Cascade News" as mentioned in appellant's affidavit and also alleges that the wife of the prosecuting attorney caused an account of the crime to be published in the "Evening Capital News" at Boise, in such a manner, as he alleges, as was highly prejudicial to appellant, and that, though the intense feeling of the people of Valley county had somewhat subsided, appellant could not secure a fair and impartial trial in that county.

The affidavit of Francis Hoagland, appellant's son, is to the effect that he attempted to get affidavits of twenty-five citizens of Valley county in support of the motion for

change of venue, but was unable to do so on account of the prejudice against appellant, although many confessed that they did not believe that a fair and impartial trial could be had in the county, and that he entertained the same belief.

Affidavits were also made by three residents of Valley county to the effect that a fair and impartial trial could not be had therein.

In opposition to the motion affidavits were made and filed by the sheriff and deputy sheriff of Valley county and also five residents of the county.

The affidavit of the sheriff explains his reasons for removing appellant to the Ada county jail instead of incarcerating him in the Valley county jail as follows:

"The jail at Cascade was overcrowded at the time, had no plumbing of any kind, and was situated on the outskirts of the town. It was not a safe, fit or proper place to keep prisoners, and it was particularly unsuited for keeping the defendant who admitted the killing of said Patterson and offered no explanation whatever therefor. Under these circumstances affiant deemed it proper and prudent to take the defendant to Boise and confine him in the county jail of Ada county and accordingly did so."

Affiant further alleged that on several occasions, in conversations had with appellant, the latter voluntarily informed him that he committed the crime. It is also alleged on information and belief that appellant, after the commission of the crime, directed one Bohms, to go immediately for the sheriff. It is also alleged that Francis Hoagland, son of appellant, testified at the preliminary hearing that appellant called to him and to Bohms, immediately after returning home on the morning of the homicide, "to get up and go and get the sheriff because he had killed Mr. Patterson"; that affiant had made numerous trips throughout the county since the crime was committed and from conversations had with numerous residents alleged that he believed appellant would receive a fair and impartial trial in Valley county.

The affidavit of W. C. Hurd, deputy sheriff of Valley county, corroborates the statements contained in the sheriff's affidavit and avers that he is of the belief that appellant will receive a fair and impartial trial in Valley county.

An affidavit is made by five other residents of Valley county to the effect that appellant will be accorded a fair and impartial trial in Valley county.

Appellant concedes in his brief that a motion for change of venue is addressed to the sound discretion of the trial court and its decision will not be disturbed by this court except where there has been an abuse of such discretion. We think the action of the sheriff with reference to the removal of appellant to the Ada county jail was justified when considered with the fact that appellant voluntarily confessed to him that he had killed Patterson, the gravity of the offense, the condition of the Valley county jail, the necessity for keeping appellant under close supervision and for eliminating any opportunity for escape and the sheriff's responsibility in these connections. Appellant insists that the action of the sheriff in removing appellant to the Ada county jail was made necessary by reason of the possibility of mob violence. Appellant's affidavit, wherein it is alleged that "on the morning of the said day (October 14, 1922) affiant was rushed to Boise," leaves the impression that he was taken to Boise immediately after his arrest. However, upon the trial it appears that the crime was committed about 6:30 A. M. and that appellant was arrested shortly thereafter and was taken to and placed in the Valley county jail. The sheriff then summoned the coroner's jury and at about 11 o'clock A. M. proceeded to take appellant to Boise, so that appellant spent practically all the morning in Cascade. From the record it appears that at the time of the arrest only six persons were present, including appellant, his son, the sheriff and prosecuting attorney. In the affidavits in support of the motion for change of venue no averment is made that a mob was present at Cascade on the morning of the homicide or that any attempt was made to take appellant from the custody of the sheriff. At the

time of the preliminary examination, although appellant was not taken down the main street of Cascade to the courthouse, it is alleged that a considerable crowd was present at the courthouse but it does not appear therefrom that any attempt was made at this time or at any time to take appellant from the custody of the sheriff. The fact that a large crowd was present is not unusual, as the gravity of the crime with which appellant was charged would be sufficient to arouse the curiosity and interest of the residents of any community and cause their attendance at the preliminary hearing.

We have carefully read the statements alleged to have been published in the "Cascade News" and have reached the conclusion that the same could not be calculated to arouse such a feeling among the citizens of Valley county against the appellant as would prevent him from having a fair and impartial trial in that county. The items published, as alleged in the affidavit of C. R. Hibbard, Esq., consist of a purported account of the murder, the appellant's removal to Boise, expressions of sympathy addressed to the deceased's family and laudatory statements concerning the deceased.

In the case of *State v. Casey,* 34 Nev. 154, 117 Pac. 5, in which the facts are similar to the case at bar, it is held:

"The rule is well settled 'that it is not sufficient merely to show that great prejudice exists against the accused. It must appear that the prejudice against him is so great as to prevent him from receiving a fair and impartial trial, and where the evidence before the court is conflicting its decision will not be reversed upon appeal.' (12 Cyc. 244, and cases cited.)"

The court did not err in refusing to grant the motion for change of venue.

Appellant's second assignment of error attacks the action of the court in denying his motion for a continuance. While this assignment is contained in appellant's brief no authorities are cited in support of the same and neither in his brief, nor, if we remember correctly, upon oral argument was this

question discussed. In the case of *State v. Lundhigh*, 50 Ida. 365, 377, 164 Pac. 690, 694, it was said:

"This court has uniformly adhered to the rule that where errors are not assigned, they will not be reviewed. And it is further well settled that even where errors are assigned, if they are not discussed either in the brief or upon oral argument and no authorities are cited in support of the assignments, they will neither be reviewed, considered nor discussed by this court." (Citing authorities.)

However, in view of the gravity of the offense charged, we have waived this objection. The motion for continuance was based upon the absence of a material witness. Affidavits in support of the motion were filed by appellant, his son, and Carl Burke, Esq., one of appellant's attorneys. Averments were made to the effect that appellant could not properly go to trial in the absence of a competent specialist on brain diseases or an alienist, by whom it was expected to prove that at the time the crime was committed appellant was temporarily insane; that appellant had been unable, on account of lack of finances, to secure such specialist as a witness, but would be able to do so by the next term and that it would be necessary to secure such specialist from Portland, Seattle or Salt Lake City. An affidavit in opposition to the motion was filed by the prosecuting attorney in which he alleged that the affidavits filed in support of the motion contained no direct allegation that qualified and competent brain specialists could not be found within the state of Idaho. Upon information and belief affiant averred that there were many qualified and competent brain specialists in the state of Idaho, and in particular the superintendents and staff of the Idaho State Insane Asylums at Blackfoot and Orofino; that upon a proper showing being made as required by C. S., sec. 9136, the court would require their attendance as witnesses in behalf of appellant; that no averment was made as to appellant's insanity at the time of the crime and that appellant had had ample time to secure such witnesses. It appears from the record that no effort was made by appellant to secure the attendance of brain

specialists or alienists who were residents of this state, and it also appears that upon the trial the court offered to make an order requiring their attendance if requested by the appellant. However, no request appears in the record.

The rule is well settled that an application for continuance is addressed to the sound judicial discretion of the court, and its ruling will not be reversed unless such discretion is abused. (*State v. Cannon,* 26 Ida. 182, 140 Pac. 963; *State v. Steers,* 12 Ida. 174, 85 Pac. 104; *State v. Wetter,* 11 Ida. 433, 83 Pac. 341; *State v. Rooke,* 10 Ida. 388, 79 Pac. 82; *State v. Rice,* 7 Ida. 762, 66 Pac. 87; *State v. St. Clair,* 6 Ida. 109, 53 Pac. 1; *State v. McMahon,* 37 Ida. 737, 219 Pac. 603.)

A careful examination of the showing made in support of and in opposition to the motion convinces us that there was no abuse of discretion by the trial court in denying the motion for continuance and its ruling will not be disturbed.

Appellant's third assignment of error attacks the action of the court in sustaining the prosecution's objection to the following question propounded to venireman Fry on his *voir dire* examination, namely:

"If the defendant should introduce evidence as to his insanity, which evidence is sufficient to raise in your mind a reasonable doubt, would you then require the state to prove he was sane beyond a reasonable doubt, if the court instructed you that was the law."

By stipulation of counsel the foregoing question, for the purposes of the trial, was deemed to be asked of each and every of the veniremen. The court did not err in sustaining the objection to the question propounded. Counsel has no right to ask a juror as to whether he believes in any principle of law applicable to the case as the juror is bound to take the law from the court. (*State v. Douthitt,* 26 N. M. 532, 194 Pac. 879; *State v. Willie,* 130 La. 454, 58 So. 147; *State v. Foster,* 150 La. 971, 91 So. 411; *Collins v. State,* 77 Tex. Cr. 156, 178 S. W. 345; *State v. Duncan,* 124 Wash. 372, 214 Pac. 838; *Jones v. State* (Okl. Cr.), 201

39 Idaho.—27

Pac. 664; 1 Hyatt on Trials, sec. 549, pp. 576–580.) The jury is bound by the instructions of the court. (C. S., sec. 8971.) C. S., sec. 8930, names the grounds for challenge for cause, and any and all questions which would show or tend to show that any of the grounds named existed should be permitted, but as the question propounded would have no tendency to elicit information bearing on the grounds named in the statute, and would have no legitimate bearing on the issue of whether the venireman would be competent or incompetent to try the cause but was directed to his knowledge of the law and whether he would follow the instructions of the court, the objection was properly sustained. Great latitude is allowed in the examination of veniremen upon their *voir dire* for the purpose of determining whether it is expedient to challenge the veniremen peremptorily or whether there is sufficient ground to challenge them for expressed or implied bias. The nature and extent of inquiries which may be made on preliminary examination of jurors is largely within the discretion of the trial court, the exercise of which will not be reversed except in case of abuse. (*State v. Pettit,* 33 Ida. 326, 193 Pac. 1015; *State v. Douthitt, supra; State v. Turley,* 87 Vt. 163, 88 Atl. 562; *Jones v. State, supra;* 16 Ruling Case Law, p. 247, sec. 64.) The exclusion of questions, upon objection, which call for the venireman's answer as to what he would do under a certain hypothetical state of the evidence and asking if he will be guided by the instructions do not constitute error.

Assignments of error Nos. 4, 5, 8 and 11 specify that the court improperly denied appellant's challenges to veniremen Smith, Scheline, Cross and Downend, respectively. Assignment of error No. 9 is that the court improperly denied appellant's challenge to juror Hoff. These assignments will be considered together. To copy into this opinion the *voir dire* examination of these veniremen would extend the opinion unnecessarily and serve no useful purpose. We have carefully reviewed all of the questions propounded to these veniremen and the answers thereto. While it is true

Opinion of the Court—Budge, J.

that they testified they had formed an opinion as to the
guilt or innocence of the defendant, based upon what they
had read in the newspapers containing a purported account
of the homicide and upon what was told to them by parties
who purported to know the facts, it is clear from their
answers to all questions propounded to them both by the
prosecution and by appellant that they had no opinion and
had expressed none as to the sanity or insanity of the ap-
pellant, and that they entertained no bias or prejudice
against the appellant or the plea of insanity and that they
could try the defendant fairly and impartially. We think
from the whole examination that their opinion was not such
a fixed, settled or unqualified opinion as would disqualify
them from acting as impartial jurors. The sole and only
defense of the accused was that he was insane at the time
he committed the murder. The killing of the deceased by
the appellant was established beyond controversy. There
is no dispute as to the manner, means, time, place or pre-
meditation. The latter was clearly proven. The law is well
settled that whenever homicide is shown or admitted to
have been committed, without lawful authority, and with
deliberate intent it is sufficiently proven to have been done
with malice aforethought. (*Guiteau's Case*, 10 Fed. 161.)
It is established without controversy that the appellant,
about an hour before the homicide was committed, took a
high-powered rifle, left his home and walked to the barn
of the deceased, a distance of approximately a mile and a
half; that he entered the barn and stood near the door
and waited about twenty minutes until the deceased came
out of his house and was on his way to the barn for the
purpose of milking his cows; that when the deceased reached
a point a few feet from the barn door appellant stepped
out of the barn toward the deceased and said to him, "It's
all up with you now," and shot at deceased twice, one
bullet taking effect in his body, killing him. Conceding
that the veniremen may have formed an opinion as to any
or all of the admitted facts as above related which were
notorious and therefore unimportant and immaterial as far

as affecting the qualifications of the veniremen were concerned, we are satisfied that the examination of the veniremen failed to disclose the fact that they had an unqualified opinion or any opinion touching the only material question to be passed upon by the jury, namely, the sanity or insanity of the appellant. The questions for the determination of the jury were: What was the condition of the mind of the accused at the time when the tragedy was enacted? Was he able to distinguish between right and wrong? Did he have sufficient reason to understand the nature of the crime with which he was charged and to understand that it was wrong for him to commit it? Was his reason so defective in consequence of mental disorder that he could not understand what he was doing or that what he was doing was wrong? Upon these questions the veniremen neither had nor had expressed an opinion, which being true, the challenges interposed were properly denied. (*Keffer v. State,* 12 Wyo. 49, 73 Pac. 556; *State v. Gould,* 40 Kan. 258, 19 Pac. 739; *State v. Morrison,* 67 Kan. 144, 72 Pac. 554; *State v. Sorter,* 52 Kan. 531, 34 Pac. 1036.)

Appellant suggests that the jury fixes the punishment. Under the provisions of C. S., sec. 8212, it might be observed that this section provides that the jury *may* decide the punishment to be inflicted, whether death or life imprisonment. If the jury fails to fix the punishment that duty then devolves upon the court. The fixing of the punishment by the jury at death was not shown to be the result of any bias or prejudice on the part of any juror and their *voir dire* examination fails to disclose any objection to their proper qualifications in this respect.

Appellant's sixth assignment of error attacks the action of the court in overruling appellant's objection to the following question propounded to Venireman Scheline by counsel for the prosecution, namely:

"Q. On the other hand, if the court instructs you as a matter of law that every man is presumed to be sane until evidence is introduced showing the contrary and on that issue of insanity the defendant has the burden of proof—

will you give the state the benefit of that presumption and that rule?''

The question raised by this assignment has heretofore been disposed of. This question should not have been asked by counsel nor have been permitted to be answered by the court for the reason that it was without the scope of a *voir dire* examination and did not tend to elicit facts which would constitute a ground for challenge. However, the action of the court in permitting the venireman to answer did not constitute prejudicial error.

Appellant's seventh assignment of error involves the action of the court in sustaining the state's challenge to venireman E. A. Williams. The record discloses that the venireman's son, John Williams, married a niece of appellant and had been subpoenaed as a witness for appellant. While this in and of itself might not be sufficient to disqualify the venireman, there is another ground which upholds the action of the court in sustaining the challenge to this venireman, namely, that the state waived its sixth, seventh, eighth, ninth and tenth peremptory challenges and could have excused the venireman peremptorily had the court not sustained the challenge. Furthermore, there is no showing in the record that the necessity of accepting other jurors not qualified was created by reason of the ruling of the court in this respect. As was held in the case of *State v. Rodriguez*, 23 N. M. 156, 167 Pac. 426, L. R. A. 1918A, 1016:

''No party can acquire a vested right to have a particular member of the panel sit upon the trial of his cause until he has been accepted and sworn. It is enough that it appear that the cause had been tried by an impartial jury. It is no ground of exception that, against his objection, a juror was rejected by the court upon insufficient grounds, unless, through rejecting qualified persons, the necessity of accepting others not qualified has been purposely created.''

See, also, to the same effect: *State v. Gordon*, 5 Ida. 297, 48 Pac. 1061; 24 Cyc. 315; 16 R. C. L., p. 291, sec. 106; 1 Thompson on Trials, secs. 43, 120.

In view of what has been said there is no merit in appellant's tenth assignment attacking the action of the court in allowing the state's challenge to the venireman Sollie Callender.

Appellant in his twelfth assignment of error attacks the action of the court in overruling his objection to the demonstration as to the character and location of the wound and body of deceased. The objection is made that the court erred in permitting the witness J. H. Hill to point out upon the person of counsel for the prosecution, at the latter's request, the places where the bullet entered the body of deceased and where it came out, over the objection of appellant, for the reason that the same was prejudicial. We do not think there is any merit in appellant's contention in this respect in view of the fact that it is proper to show the condition of the body of the deceased when found, its location and position, the existence of wounds, their location, cause and appearance, or the existence and location of bruises (30 Corpus Juris, 207, sec. 435), and to do this a witness may use his own body, or a member of his body, to illustrate or explain the evidence (22 Corpus Juris, 767, sec. 865; *Horan v. Chicago, St. P., M. & O. Ry. Co.,* 89 Iowa, 328, 56 N. W. 507), and we think this rule would likewise apply to counsel's body. The lower court properly overruled the objection.

Appellant, in his thirteenth assignment of error, complains of the court's action in overruling his objection to the indorsement of the name of *James M. Haskins* on the information and denying appellant's motion for a continuance of one week. From the record it appears that during the examination of Haskins as to his qualifications to sit as a juror he disqualified himself on the ground that he had had several conversations with appellant relating to deceased and for that reason felt that he could not act as a fair and impartial juror. When permission was asked by the prosecution to indorse his name upon the information during the trial, objection thereto was made by appellant. Thereupon the prosecuting attorney took the stand and testified that

the first time he was informed that Haskins knew anything about the case was when he was examined as a venireman. An affidavit was dictated into the record by Karl Paine, Esq., of counsel for the prosecution, to the effect that he did not know there was such a man as Haskins until the latter disqualified himself as a juror; that he requested him to meet him at the next recess of court but that Haskins was unable to do so, and that affiant had sent for him that morning and had only been able to get in touch with him at the recess immediately before permission to indorse his name on the information was requested, at which time affiant was informed as to what Haskins would testify to.

Counsel for appellant insist that they were taken by surprise and that appellant was prejudiced by the indorsement of his name on the information. Haskins was examined as a juror on the afternoon of February 14th and the request for the indorsement of his name was made the following afternoon. From the showing made we think that the prosecution used due diligence in making the request as soon as it was ascertained that Haskins was a material witness for the prosecution. In the case of *State v. Wilmbusse,* 8 Ida. 608, 70 Pac. 849, it was held:

"Under section 2 of an act (5th Sess. Laws 1899, p. 125) (*now C. S., sec. 8810*), requiring the district attorney to indorse on the information the names of all witnesses known to him, at the time of filing the same, and at such time before the trial of any case, as the court may rule or otherwise prescribe, indorse thereon the names of such witnesses as shall then be known to him, it was not error to permit the prosecuting attorney to indorse the names of other witnesses on the information after the trial jury had been impaneled, it being shown that such witnesses were unknown to him prior to that time."

See, also, *State v. Allen,* 20 Ida. 263, 117 Pac. 849; *State v. Rooke, supra; State v. Crea,* 10 Ida. 88, 76 Pac. 1013. The test as applied in the cases last cited is whether or not the defendant was prejudiced by the indorsement of the names of witnesses during the trial. Upon the *voir dire*

examination of Haskins it appeared that he had had conversations with appellant relative to the deceased and on this account he was a material witness and was called for the purpose of relating these conversations, which is all that he testified to. Inasmuch as the conversations were had with the appellant and no other persons were present, the only person competent to question the statements of this witness was the appellant, and at the time the request was made he had had one full day in which to prepare for and meet the testimony of this witness. For the foregoing reasons we do not think that appellant was prejudiced by the action of the court in permitting the name of this witness to be indorsed on the information after the trial had commenced, or that the court committed error in granting permission to do so or in denying the motion for a continuance.

Furthermore, we do not think a sufficient showing of surprise was made. In the case of *People v. Symonds,* 22 Cal. 348, it was held:

"An application by a defendant to postpone a trial, on the ground of surprise, at the introduction of a witness whose name is not indorsed upon the indictment, must, when made, be supported by an affidavit or other evidence or suggestion showing the surprise, in the absence of which it should be denied."

There is no merit in the fourteenth assignment of error. (*State v. Perry,* 4 Ida. 224, 38 Pac. 655; *In re Niday,* 15 Ida. 559, 98 Pac. 845; 40 Cyc. 2370, 2377.)

The fifteenth assignment of error is predicated upon the action of the court in sustaining the state's objection to a hypothetical question propounded to Dr. J. T. Rutledge. The record is somewhat confusing touching this matter. The first question propounded was as follows:

"Q. I will ask you this question: assuming that in the month of November, 1917, a normal man was thrown out of a wagon, falling on his head and face, such fall mashing his nose and bruising the left side of his head, which injury caused him to be unconscious and out of his head at intervals for a period of two or three days, and after such in-

jury, parts of his right arm became nervous and since that time has gradually become more nervous, and said party after said accident has had considerable difficulty in regard to writing or to shaving with his right hand, and since the date of said accident, said party has complained of his head hurting him and has had dizzy spells, state what these symptoms indicate, if anything, with reference to that party, as to whether said party has or might have a pressure on one of the nerve centers of control of the brain.''

This question, over the prosecution's objection and without the ruling of the court was answered by the witness by stating: ''He might have.'' The following question was then asked:

''Q. Now, I will ask you, if said party did have such a pressure on the brain, would that or could that impair his mind and could that make him insane at intervals?''

To this question the prosecution objected upon the ground that no proper foundation had been laid and that the witness had not shown himself qualified to answer the question as an expert. Whereupon the question was withdrawn and the following question asked:

''Q. Do you know whether a party having such a pressure on the nerve centers or centers of control of the brain could be affected in such a way that his mind would be impaired and he might or could be insane at intervals?''

To this question an objection by the prosecution upon the same grounds interposed to the last question was sustained. The last question would seem to be the only one before us for consideration, since the first question was answered and the second withdrawn. The record fails to show either by direct proof or reasonable inferences that might be drawn from the evidence that appellant suffered from a pressure on the nerve centers or centers of control of the brain, or that the injuries purported to have been received by him were of such a character that would result in a pressure on the nerve centers or centers of control of the brain. Aside from this, the witness answered that appellant might have such pressure but the question would be whether he did

have, at the time of the homicide, and also whether such
pressure was of such a character that it rendered appellant
insane and he was insane at the time he killed the deceased.
If appellant was insane at that time or at the time of the
trial he would be entitled to an acquittal. That he may
have been insane at intervals, in the absence of competent
proof that he was insane at the time of the killing, would
not excuse the commission of the crime. He may have had
a pressure on the brain but there is no competent evidence
in the record to that effect or that he killed the deceased
while irresponsible by reason of such pressure. Further-
more, the witness, by his own testimony, showed that he was
not qualified as an expert to testify to diseases of the brain
and their effect. The state offered during the examination
of this witness to permit him to examine appellant for the
purpose of determining his sanity. It also appears from the
record that the witness had had nothing more than possibly
a casual acquaintance with appellant, had never treated him
for any illness or associated with him in such a way that he
was able to testify other than as a layman, and when called
by the prosecution on rebuttal as a nonexpert witness he
testified that in his opinion appellant was sane. The objec-
tion was properly sustained by the court. (*State v. Larkins,*
5 Ida. 200, 47 Pac. 945; *Austin v. Brown Brothers Co.,* 30
Ida. 167, 164 Pac. 95; 22 Corpus Juris, p. 526, sec. 610.)

At the conclusion of the testimony of the last witness
mentioned the prosecution moved to strike out all of the
testimony in the record relating to the injured arm of the
appellant or the effect of the fall or injury he received so
far as it relates to his arm, on the ground that his physical
condition was not in issue but merely his mental condition,
which motion was granted by the court. Appellant in his
nineteenth assignment of error urges that the court erred
in this respect. Since there is no competent evidence in the
record that the defendant was suffering from pressure on
the nerve centers or centers of control of the brain, and
since there is no competent evidence that the nervousness of
the right arm was caused by such pressure but may have

Opinion of the Court—Budge, J.

been due to other causes, at most we have before us the mere suggestion that the nervousness of the right arm was caused by a pressure on the nerve centers of the brain and resulted in defendant's insanity, and that the defendant was insane at the time he committed the homicide. In the absence of proper evidence connecting the nervousness of the arm with pressure on the nerve centers of the brain causing insanity at the time of the homicide, it was not prejudicial error to strike such testimony. The question under investigation was the mental and not the physical condition of the appellant. Therefore any matter relating to his physical condition purely and which was not shown to have any connection with his mental condition was immaterial.

Appellant's sixteenth assignment of error questions the ruling of the court in sustaining the state's objection to the question propounded to the witness J. A. Madison as to whether he regarded the appellant sane or insane. We think upon the showing made that this witness should have been permitted to answer the question. However, an examination of the testimony offered by this witness discloses facts which would lead to no other conclusion but that the defendant was sane, and in this connection we are reminded of C. S., sec. 9191, which provides that: "Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice in respect to a substantial right." (*State v. Larkins, supra.*) Numerous witnesses called on behalf of appellant as nonexperts testified that appellant in their opinion was insane at the time of the homicide and the evidence of this witness at most would be cumulative, if the witness had so testified. The action of the court in sustaining the objection did not constitute reversible error or tend to prejudice appellant in respect to a substantial right.

In his seventeenth assignment of error appellant complains of the refusal of the court to give appellant's requested instruction No. 4. From an examination of the in-

structions given by the court, and particularly instructions Nos. 15, 19, 20, 21, 22, 23, 24 and 41, we think this requested instruction was fully covered.

In his eighteenth assignment of error appellant complains that the court erred in giving instructions Nos. 15, 16, 22 and 24 on its own motion. This assignment is too general, and under the authority of *McDonald v. North River Ins. Co.,* 36 Ida. 638, 213 Pac. 349, is not properly here for consideration. However, this being a capital case, we have waived this objection and have carefully examined the instructions complained of, which we think, when considered with all of the instructions given as a whole, correctly states the law. We find no reversible error in the giving of any of these instructions.

We come now to the twentieth and last assignment of error, namely, that the court erred in denying appellant's motion for a new trial. The motion was based upon the ground of newly discovered evidence, being evidence as to the condition of appellant's head as disclosed by X-ray photographs taken after the trial. There is no merit in this assignment. We have examined the showing made on behalf of appellant in support of his motion and also the counter showing by the prosecution. There is no proper showing of diligence on appellant's part sufficient to have warranted the trial court in granting the motion. It might be observed that at the commencement of the trial of this case the presiding judge suggested to appellant that an order would be made requiring the attendance of an alienist or specialist to testify touching the question of the sanity or insanity of the appellant upon his request but no request was made. There was ample time also prior to the trial to have had X-ray photographs taken, and the presumption is that at any time during the course of the trial upon proper application the court would have ordered that this be done. The showing made negatives diligence such as is required to justify the granting of a new trial upon the ground of newly discovered evidence.

Opinion of the Court—Budge, J.

Our examination of the entire record, which has been made with great care and which we find devoid of prejudicial error, convinces us that appellant had a fair and impartial trial by a jury unbiased and unprejudiced. There now rests upon this court the sole duty to affirm the judgment and in doing this we are not unmindful of the probable consequences that will follow. The act of the defendant in taking the life of the deceased was both cruel and inhuman and without provocation or excuse and was deliberately planned and premeditatedly carried out without affording the deceased an opportunity to defend himself or offer any resistance against the uncalled for and inexcusable fatal assault made upon him. The question whether defendant was sane or insane at the time of the homicide was fairly submitted to the jury upon competent evidence and under proper instructions and the evidence sustains the verdict in this respect as in all others. It does not necessarily follow that because the slaying of a person was done in a cruel and atrocious manner that it was due to the insanity of the slayer.

The order and judgment appealed from must be affirmed, and it is so ordered.

McCarthy, C. J., William A. Lee and Wm. E. Lee, JJ., and Ensign, District Judge, concur.

Petition for rehearing denied.