192 N.J. Super. 571 (1983)
471 A.2d 796
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MAURICE HOWARD, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LAWRENCE WOODWARD, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
KENNETH THOMPSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 18, 1983.
Decided December 12, 1983.
*572 Before Judges MATTHEWS, COLEMAN and GAULKIN.
Joseph H. Rodriguez, Public Defender of New Jersey, attorney for appellant Maurice Howard (E. Carl Broege and Roger A. Solomon, Assistant Deputy Public Defenders, of counsel and on the brief).
George L. Schneider, Essex County Prosecutor, attorney for respondent in Howard (Stephen F. Smith, Jr., Assistant Essex County Prosecutor, of counsel; Hilary L. Brunell, Assistant Prosecutor, on the brief).
Ronald G. Rubin, attorney for appellant Lawrence Woodward (Brian S. O'Malley, on the brief).
John B. Mariano, Camden County Prosecutor, attorney for respondent in Woodward (Dennis G. Wixted, Assistant Prosecutor, of counsel and on the briefs).
Joseph H. Rodriguez, Public Defender of New Jersey, attorney for appellant Kenneth Thompson (Leonard S. Baker, Assistant Deputy Public Defender, of counsel).
*573 John B. Mariano, Camden County Prosecutor, attorney for respondent in Thompson (Arnold Golden, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
We have before us three motions for leave to appeal rulings of trial judges which, it is claimed in each case, restricted the rights of each of the defendants who is charged with capital murder from freely questioning potential jurors on voir dire. We grant leave to appeal, and having received the briefs and appendices from counsel, proceed to dispose of the issue before us. R. 2:11-2.
While each defendant first raises an issue with respect to sequestered[1]voir dire of prospective jurors, we see no issue to be resolved, since it is clear that sequestered voir dire will be permitted, as it should be in each case. The State also urges that voir dire in these cases be sequestered.
The question before us goes to the method to be employed by the trial judge in conducting the voir dire. Should it be conducted by the trial judge exclusively, using questions submitted to him by counsel, as was the ruling in each of the cases before us, should it be conducted by the judge and supplemented by counsel, or should it be conducted exclusively by counsel as is urged by defendant Howard?
R. 1:8-3 provides in pertinent part:
(a) Examination of Jurors. For the purpose of determining whether a challenge should be interposed, the court shall interrogate the prospective jurors in the box after the required number are drawn without placing them under oath. The parties or their attorneys may supplement the court's interrogation in its discretion. At trials of crimes punishable by death, the examination shall be made of each juror individually, as his name is drawn, and under oath.
*574 This rule is substantially the same as that referred to in State v. Manley, 54 N.J. 259, 281 (1969).[2]
Counsel for defendants argue that Manley was not a capital case and therefore cannot control the issues here, and that R. 1:8-3(a) must be read to require counsel's participation in juror voir dire as a matter of constitutional right.
In Manley, although the indictment was for murder, the State did not demand the death penalty. As the Court noted in its opinion "[y]et the interrogation of prospective jurors was excessively prolix and eight days passed before the jury box was filled." Id. at 263. Manley was convicted of second degree murder, and the Court in affirming the conviction took the opportunity to discuss the question of the voir dire examination of jurors:
The remedial movement is toward adoption of methods designed to restore the fundamental basis for preliminary questioning, i.e., an expedient selection of a fair and impartial jury, one that will decide the case fairly under the evidence presented and the instructions of the court. Obviously a most important method is to limit more stringently the conduct and scope of the voir dire. Essentially this means eliminating the efforts to indoctrinate, to persuade, to instruct by favorable explanation of legal principles that may or may not be involved, to lecture on the law and the facts and the relation of one to the other, the lecture ending in a question for form's sake. It means also a prohibition of the hypothetical question intended and so framed as to commit or to pledge jurors to a point of view or a result before they have heard any evidence, argument of counsel or instructions of the court.
....
The impression is inescapable that the aim of counsel is no longer exclusion of unfit or partial or biased jurors. It has become the selection of a jury as favorable to the party's point of view as indoctrination through the medium of questions on assumed facts and rules of law can accomplish.
In order to remedy the situation this Court has adopted Rule 1:8-3(a), effective September 8, 1969, applicable to both civil and criminal cases.

*575 ....
Administration of this rule will require trial judges to exercise greater control over the voir dire questioning than has been exercised in our State in modern times. The burden necessarily assumed by them will be compensated for in substantial measure by a shortening of the time for empaneling a jury [citation omitted] and by avoidance of the tedium associated with prolix and repetitious questioning, much of which intrudes into the aspect of the trial which should be dealt with by the judge alone at the proper point in the proceedings. From the public standpoint, preliminary questioning by the neutral judge is more likely to produce a truly impartial jury. In addition it will avoid the unreasonable expense of a protracted jury examination; it will serve the interest of the jurors by conserving their time and energy and by eliminating unwarranted intrusion into their personal affairs; it will tend to encourage citizens to serve as jurors; it will obviate the expense of wasted court time and serve the interest of other litigants in the availability of court facilities, as well as the interest of the judicial system in the effective and productive dispatch of its business....
In order to accomplish the purpose of Rule 1:8-3(a), the trial court in administering the discretionary portion thereof must exercise considerable restraint over supplementary questioning by counsel. The basic intent is to have the voir dire conducted exclusively by or through the trial judges to the extent reasonably possible. Examination by the court will be facilitated if questions on subjects the parties or counsel desire covered are submitted in advance of or at the opening of the trial. [citation omitted]. Of course supplementary questioning by counsel personally is not foreclosed entirely, but control over its scope and content is left to the experienced judgment and discretion of the trial judge to be exercised with the history and purpose of the rule in mind. In this connection also it may be noted that the rule calls for a much more guarded exercise of discretion than that previously announced in State v. Sullivan, 43 N.J. 209, 239-240 (1964). [54 N.J. 280-283]
We conclude that there is nothing in our statutory law, the rules of court, or cases decided since Manley which derogates the holding of that case. While it is true that Manley did not involve the death penalty, nevertheless there was a death penalty statute (N.J.S.A. 2A:113-4) in effect at the time that it was decided, and we believe that the language of the opinion evinces consideration of that statute. Most convincing is Manley's implicit modification of the exercise of discretion which the Court had set in State v. Sullivan, 43 N.J. 209, 239-240 (1964). Although the death penalty was not imposed, Sullivan was a capital case.
Defendants argue that the right of counsel to conduct voir dire is of constitutional dimension, and even if not, the trends of *576 expert opinion, legislation and judicial precedent require the conclusion that there should be no limitation imposed on attorney conducted voir dire examination in capital cases.
We have not been cited to a case which supports defendants' arguments as to the constitutional right to attorney conducted voir dire, nor have we been able to find one. The only significant mention of the problem is found in Turner v. Commonwealth, 221 Va. 513, 273 S.E.2d 36 (Sup.Ct. 1980), cert. den. 451 U.S. 1011, 101 S.Ct. 2347, 68 L.Ed.2d 863 (1981). Turner was a capital case in which defendant was sentenced to death. The Virginia Supreme Court in response to arguments similar to those raised here, stated:
Turner suggests that, even if Code § 8.01-358 confers no unconditional right to counsel-conducted voir dire, the trial court abused its discretion in refusing to allow defense counsel to question prospective jurors directly and in not questioning each prospective juror out of the presence of other jurors. While the defendant has a constitutional right to a fair and impartial jury, he has no constitutional right to counsel-conducted voir dire. [citation omitted]. In the absence of a statute or court rule to the contrary, as long as the selection procedure results in a fair and impartial jury, the manner in which a jury is to be selected is properly within the trial court's sound discretion. [273 S.E.2d at 41]
Since the decision in Turner, the Virginia Legislature amended Virginia Code § 8.01-356 to state that "[t]he court and counsel for either party shall examine under oath...."
With respect to the second part of this argument: that attorney conducted voir dire of individual jurors is the most effective method of jury selection, we find nothing in the record to justify this conclusion. Indeed, the language of Manley, including the appendix annexed to that opinion, seems to demonstrate otherwise. Nor do we find a national trend toward the practice. The latest information available to us shows that 17[3] *577 states permit attorney conducted voir dire examination, 16[4] leave the examination to the discretion of the trial judge, and 17[5] have a combination of examination by the trial judge and counsel. We fail to detect a trend of any significance in these statistics. If anything, it reinforces our conclusion that the self-termed right to attorney conducted voir dire is illusory.
Defendants also rely on statements made by Justice Handler in his opinion for the Court in the recent case of State v. Williams, 93 N.J. 39 (1983), as indicating a departure from the rule established in Manley. In this respect we are directed to the following:

*578 Another important, indeed critical, means for dealing with potential and latent bias is the voir dire. The court should consider the efficacy of more exhaustive and searching voir dire examinations. The court in conducting the voir dire should be particularly responsive to the requests of counsel regarding the examination of prospective jurors as to potential bias. The court could consider whether there should be a greater willingness to resolve doubts in favor of the defendant in excusing jurors for cause. Particularly in capital cases, trial judges should exercise extraordinary care in the voir dire of potential jurors and could excuse for cause any juror who has been exposed to sensational prejudicial publicity, especially where such exposure is repeated and involves patently inadmissible evidence. The court should also be mindful of the need to fashion effective cautionary jury instructions and to increase the frequency of their application. [Id. at 68-69; footnotes 14 and 16 omitted]
This language, however, must be read in the context of the issue presented to the court: prejudicial pretrial publicity. Williams did not involve the issue of the conducting of voir dire. In fact, footnote 15 to the opinion reads:
The present procedural framework for jury voir dire, R. 1:8-3(a); State v. Manley, 54 N.J. 259 (1969), would permit this exercise of discretion by the trial judge. [93 N.J. at 68]
In sum, we conclude that the principles for conducting voir dire as set forth in State v. Manley, including the appendix attached thereto, obtain under the present capital punishment law. The right of counsel to conduct any portion of the voir dire is subject to the sound discretion of the trial judge in each instance and is to be exercised on a case-by-case basis as the circumstances may require.
The orders appealed are vacated and the cases remanded for proceedings consonant with this opinion.
NOTES
[1] I.e., questioning each potential juror out of the presence of the remaining members of the panel.
[2] That version of the rule contained an exception to individual voir dire in cases where the death penalty had been waived. See ibid.
[3] Fifteen states permit attorney conducted voir dire by statute or rule:

CAL. [PENAL] CODE § 1078 (West Cum.Supp. 1983); CONN. GEN. STAT. ANN. § 51-240 (West Cum.Supp. 1983-1984); HAWAII REV.STAT. § 635-27 (1976); KAN. STAT. ANN. § 60-247(b) (1976); LA. CODE CRIM. PROC.ANN. art. 786 (West 1981); MISS. CODE ANN. § 13-5-69 (1972); MONT. CODE ANN. § 46-16-303 (1983) and Title 25, ch. 20, M.R.CIV.P. 47(a); N.Y. [CRIM.PROC.] LAW § 270.15(1) (McKinney 1982); N.D.R. CRIM.P. 24(a); S.D.COMP.LAWS ANN. § 15-6-47(a) (1967); TEX. [CRIM. PROC.] CODE § 35.17 (West Cum.Supp. 1982-1983); VT.R.CRIM.P. 24(a); W. VA. CODE ANN. § 56-6-12 (1966); WIS. STAT. ANN. § 972.01 (West Cum.Supp. 1983-1984) (applying WIS. STAT. ANN. § 805.08(1) (West 1977)); WYO.R.CRIM.P. 25(a).
Two states permit attorney conducted voir dire by case law: State v. Hoagland, 39 Idaho 405, 417-18, 228 P. 314, 318-19 (Sup.Ct. 1925), and Hurt v. Monumental Mining Co., 35 Idaho 295, 299, 206 P. 184, 185 (Sup.Ct. 1922).
[4] ALASKA R.CIV.P. 47(a) and ALASKA R.CRIM.P. 24(a); ARK.STAT.ANN. § 39-226 (1962); DEL. SUPER. CT. [CRIM.] R. 24(a); IOWA R.CIV.P. 187(b) and IOWA CODE § 813.2, R. 17(6) (1979); MD.R.P. 543(d), 745; MASS.GEN. LAWS ch. 234, § 28 (West Cum.Supp. 1983-1984) and MASS.R.CIV.P. 47(a); MICH.COURT R. 511.3; MO. ANN. STAT. § 546.160 (Vernon 1953); NEV. REV. STAT. ANN. § 175.031 (1981); N.H. REV. STAT. ANN. § 500-A:12 (1983); N.J.CT.R. 1:8-3(a); OHIO R.CRIM.P. 24(a); 234 PA.R.CRIM.P. 1106(e) (1983); S.C. CODE ANN. § 14-7-1020 (1977); TENN.R.CIV.P. 47.01; UTAH R.CIV.P. 47.01.
[5] ALA.R.CIV.P. 47(a); ARIZ.R.CRIM.P. 18.5(d); COLO.R.CRIM.P. 24(a); FLA.R.CRIM.P. 3.300(b); GA. CODE ANN. § 59-705 (1981); ILL. REV. STAT. ch. 110A, § 234 (1968); IND.R.TRIAL P. 47(A); KY.R.CRIM.P. 9.38; ME.R. CRIM.P. 24(a); MINN. R.CRIM.P. 26.02 subd. (4); N.M.DIST.CT.R. 47(a); N.C. GEN. STAT. § 9-15(a) (1981); OKLA.DIST.CT.R. 6; ORE.REV.STAT. § 136.210 (1981); R.I. GEN. LAWS ANN. § 9-10-14 (West Cum.Supp. 1983); VA. CODE ANN. § 8.01-358 (West Cum.Supp. 1983); WASH.SUPER.CT. [CRIM.] R. 6.4(b).